## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

P.K., N.H., M.K.1, M.K.2,         )

AFSHAN ASADI SORKHAB, NEDA  )
HEIDARI DEHKORDI, Y.S.1, Y.S.2,  )
Y.S.3,                      )
     No. 2285-13th Block-Aps.Manazel  )
     Shahrak Naft               )
     Ahvaz, Khuzestan         )
     Iran                     )

HAMED SUFYAN OTHMAN    )
ALMAQRAMI,              )
     414, Muthia Nagar,       )
     Annamalainagar, C.Kothangudi Post,  )
     Chidambaram Taluk.       )
     Cuddalore District,        )
     Chennai State, India.      )

RADAD FAUIZ FUROOZ,     )
     HYVE Soho Suites       )
     Jalan Impact, Cyber 6     )
     63000 Cyberjaya, Selangor  )
     Malaysia,               )

       on behalf            )
       of themselves and all others  )
       similarly situated,       )

         Plaintiffs/Petitioners,  )

v.                       )

REX W. TILLERSON, in his official  )
capacity as Secretary of State,   )
JOHN DOES #1-#50, in their official  )
capacity as the consular officials  )
responsible for issuing diversity visas,  )
     U.S. Department of State    )
     2201 C St. NW        )
     Washington, DC 20520    )

         Defendants/Respondents.  )

No. _____

**PETITION FOR MANDAMUS
AND COMPLAINT FOR
INJUNCTIVE AND DECLARATORY
RELIEF**

## PETITION FOR MANDAMUS AND
## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Samer E. Khalaf
Abed A. Ayoub
Yolanda Rondon
AMERICAN-ARAB ANTI-DISCRIMINATION
COMMITTEE
1705 DeSales Street, N.W., Suite 500
Washington, D.C. 20036
Tel: 202-244-2990
Skhalaf@adc.org

Karen C. Tumlin
Esther Sung
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd, Suite 1600
Los Angeles, CA 90010
(213) 639-3900
tumlin@nilc.org
sung@nilc.org

Justin B. Cox
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
(678) 279-5441
cox@nilc.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
 OF THE DISTRICT OF COLUMBIA
4301 Connecticut Avenue, NW, Suite 434
Washington, DC 20008
202-457-0800
aspitzer@acludc.org

Matthew E. Price  (DC Bar #996158)
Max J. Minzner (pro hac vice pending)
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
Tel. 202-639-6000
Fax: 202-639-6066
Email: mprice@jenner.com
        mminzner@jenner.com

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600
Fax: (212) 549-2654
ojadwat@aclu.org

Cody H. Wofsy
Spencer E. Amdur
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770
Fax: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org

*Counsel for Plaintiffs*

## INTRODUCTION

1.     This lawsuit challenges the State Department's adoption of a policy refusing immigrant visas to certain individuals who had been selected to apply for immigrant visas in the fiscal year 2017 ("FY2017") diversity visa lottery.  It also requests a writ of mandamus to require consular officials to fulfill their non-discretionary duty to adjudicate visa applications and issue immigrant visas to those eligible individuals.  For the affected lottery winners, the stakes are high and the situation is urgent:  By statute, lottery winners must have their visas in hand by September 30, 2017 or they lose their chance to become Americans.

2.     The diversity visa program awards immigrant visas to nationals of countries that historically have sent low numbers of immigrants to the United States.  That includes nationals of Iran, Syria, Sudan, Yemen, Somalia, and Libya, among dozens of other countries.  Each year, a certain number of individuals from these countries are randomly selected to apply for diversity immigrant visas.  Under the governing statutes and regulations, consular officials must issue those visas if the selected winners are statutorily eligible, are not inadmissible under 8 U.S.C. § 1182(a), and visas remain available for that particular fiscal year.  However, the immigrant visas must be issued by no later than September 30, which is the end of the fiscal year, or the winners lose their slots.  The diversity visa program for each fiscal year terminates at the end of the fiscal year, and new lottery winners are chosen for the next fiscal year.

3.     An immigrant visa can be used to enter the United States as a lawful permanent resident (or "green card" holder) for up to six months after its issuance.  But, like all visas, diversity visas are conditional and do not guarantee a right to enter:  All visa holders must first be inspected and admitted at a port of entry.

1

4.      On March 6, 2017, President Trump issued an Executive Order banning Iranian,
Syrian, Sudanese, Yemeni, Somali, and Libyan nationals from entering the United States, for 90
days after the relevant part of the Order went into effect in late June 2017. The Executive Order
purportedly was issued under the authority of 8 U.S.C. § 1182(f), which provides the President
the authority to "suspend the entry of" or "impose [restrictions] on the entry of" aliens under
certain circumstances.

5.      This case does not challenge the President's power to issue the Executive Order.
However, under the governing statutes, visa issuance and entry are distinct. Visa issuance and
entry are handled by different executive agencies and components, and occur at different times.
The Order did not expressly prohibit visa issuance.

6.      Nevertheless, the State Department has adopted a policy directing consular
officials to deny diversity visas to nationals from the countries barred from entry by the
Executive Order. That policy violates statutes and regulations requiring the issuance of
immigrant visas to diversity visa lottery winners who are statutorily eligible, and it incorrectly
conflates the Executive Order's ban on entry with a ban on visa issuance.

7.      The consequences for Plaintiffs and others who are similarly situated is draconian
and grossly unfair. Winning the diversity lottery spot is rare and precious: For the diversity
visas to be issued in the current fiscal year, more than 19.3 million individuals and their
immediate family members entered the lottery, from which fewer than 84,000 were chosen for
the opportunity to apply for one of 50,000 visas.[1] The entry prohibition in the Executive Order

---

[1] U.S. Dep't of State, Visa Bulletin for July 2016 (June 8, 2016),
https://travel.state.gov/content/visas/en/law-and-policy/bulletin/2016/visa-bulletin-for-july-2016.html (lasted visited July 29, 2017). As the Department of State explains, more than 50,000
applicants are selected because some lottery winners cannot or do not pursue their cases to visa
issuance. *See id.*

expires of its own force just days before the September 30 deadline for Plaintiffs to receive their immigrant visas.  But at that point, Plaintiffs and others similarly situated will either already have been refused their visas under the State Department's policy, or, if not yet refused, their visas will likely be effectively denied, as there is little chance the government would process thousands of applications in the few days that would remain before the deadline.  Their golden ticket will vanish overnight.

8.      The Executive Order does not (and could not) require that senseless result.  The Order does not instruct the State Department to deny diversity immigrant visas, nor does it explain why denying diversity immigrant visas is necessary, or even helpful, to effectuate a temporary entry ban.

9.      Although other cases are currently pending that challenge the Executive Order's suspension of *entry*, Plaintiffs do not challenge that suspension of entry here.  Instead, Plaintiffs are simply asking that their visa *applications* be processed consistent with the statute and regulations, so that they can, if eligible, be issued visas before the September 30 deadline.  If Plaintiffs' claim is successful, and some or all Plaintiffs receive the visas to which they are entitled while the Order's entry ban is in effect, Plaintiffs do not seek an order permitting them to immediately *enter* the United States or striking down the Executive Order.  Instead, they would simply wait until the suspension on entry expired and would then seek entry.

10.     The State Department's policy imposes irreparable harm on Plaintiffs in violation of consular officials' non-discretionary duty to issue visas to eligible applicants, without any justification.

3

## PARTIES

11.     Plaintiff P.K. is an Iranian national who was selected as a diversity lottery winner on May 3, 2016.  P.K. has a bachelor's degree in mechanical engineering and has worked as an engineer for 18 years.

12.     Plaintiff N.H. is the wife of P.K.

13.     Plaintiffs M.K.1 and M.K.2, by and through their guardian and father P.K., are the minor children of P.K. and N.H.

14.     Plaintiff Afshin Asadi Sorkhab is an Iranian national who was selected as a diversity lottery winner on May 3, 2016.  Mr. Sorkhab has a bachelor's degree in chemical engineering and has worked as an engineer for 19 years.

15.     Plaintiff Neda Heidari Dehkordi is the wife of Afshin Asadi Sorkhab.

16.     Plaintiffs Y.S.1, Y.S.2, and Y.S.3, by and through their guardian and father Afshin Asadi Sorkhab, are the minor children of Afshin Asadi Sorkhab and Neda Heidari Dehkordi.

17.     Plaintiff Hamed Sufyan Othman Almaqrami is a Yemeni national who was selected as a diversity lottery winner on May 3, 2016. Mr. Almaqrami has a master's degree in linguistics and is currently a Ph.D. student in linguistics at Annamalai University in India.

18.     Plaintiff Radad Fauiz Furooz is a Yemeni national who was selected as a diversity lottery winner on May 4, 2016. Mr. Furooz has graduated high school and is currently studying educational technology at Ibb University in Yemen.

19.     Defendant Rex W. Tillerson is Secretary of State.  He is sued in his official capacity.

4

20.     Defendants John Does #1-50 are the consular officials employed by the U.S. Department of State who are responsible for issuing or refusing to issue diversity visas. Their identities are not publicly disclosed by the U.S. Department of State. They are sued in their official capacity.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1361. The Court has remedial authority pursuant to 28 U.S.C. § 1361, 28 U.S.C. § 2201, and 5 U.S.C. § 702.

22.     Venue is proper pursuant to 28 U.S.C. § 1391(e)(1)(A) because Defendant Tillerson, in his official capacity as Secretary of State, resides in this District, and pursuant to 28 U.S.C. § 1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred in this District, namely, the formulation and promulgation of the policy under challenge.

## FACTUAL ALLEGATIONS

**A.     The Diversity Visa Program.**

23.     Congress adopted the diversity visa program, 8 U.S.C. § 1153(c), in order to provide immigration opportunities for people who live in countries with historically low rates of immigration to the United States. To be eligible for a diversity visa, an applicant must be a national of a country covered by the program, must have either a high school education or two years of qualifying work experience, *see* 8 U.S.C. § 1153(c)(2), and must not be inadmissible under 8 U.S.C. § 1182(a). Spouses and unmarried minor children of the applicant are entitled to the same status as the applicant. 8 U.S.C. § 1153(d). The diversity visa program is one of the

few ways in which individuals who do not have family members in the United States nevertheless can immigrate.

24.     For each fiscal year, the State Department conducts a lottery to award no more than 50,000 diversity visas from among the many millions of lottery entries it receives.  The State Department then processes the winners' applications for immigrant visas.  The process requires the winners to submit certain documents and attend a consular interview.  If a lottery winner satisfies the eligibility criteria and is not inadmissible under 8 U.S.C. § 1182(a), and if visas remain available, then consular officials must issue an immigrant visa. *See* 8 U.S.C. § 1153(c)(1) (making the issuance of diversity visas mandatory for eligible qualified immigrants); 22 C.F.R § 40.6 (visas may only be refused on "a ground specifically set out in the law or implementing regulations"); 22 C.F.R. § 42.81(a) (consular official must either issue the visa or refuse it under 8 U.S.C. § 1182(a), which concerns grounds of inadmissibility, or 8 U.S.C. § 1201(g), which concerns eligibility).

25.     If a lottery winner does not receive his or her visa by the end of the fiscal year (September 30), the winner loses his or her slot and must reenter the lottery.[2]  8 U.S.C. § 1154(a)(1)(I)(ii)(II).

26.     Once issued, an immigrant visa can be used to enter the United States as a lawful permanent resident for up to six months after issuance, 8 U.S.C. § 1201(c)(1), but the visa does not by itself guarantee entry. *See* 8 U.S.C. § 1201(h).

---

[2] There is a limited exception where the government fails to comply with a court order to process visa applications before the deadline.

**B.    The Executive Order.**

27.    On March 6, 2017, President Trump issued an Executive Order purporting to suspend, for 90 days from the effective date, the entry into the United States of certain nationals from Iran, Libya, Somalia, Sudan, Syria, and Yemen. *See* Exec. Order No. 13780, 82 Fed. Reg. 13209 (2017) ("Executive Order"). President Trump claimed statutory authority to do so pursuant to 8 U.S.C. §§ 1182(f) and 1185(a).[3]

28.    The Executive Order was almost immediately enjoined in relevant part pending legal challenge. On June 26, 2017, the U.S. Supreme Court partially stayed the preliminary injunctions, allowing the Executive Order to become effective, except as to foreign nationals with a "bona fide relationship with a person or entity in the United States." *Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080, 2088 (2017) (per curiam). Thus, under the terms of the Executive Order and a memorandum subsequently issued by the President, the entry ban on nationals of the six countries without such bona fide relationships will remain in effect for 90 days, until September 24, 2017. *See* White House, Press Release, Presidential Memorandum for the Secretary of State, the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence (June 14, 2017), https://www.whitehouse.gov/the-press-office/2017/06/14/presidential-memorandum-secretary-state-attorney-general-secretary.

---

[3] Section 1182(f) provides: "Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate." Section 1185(a) likewise speaks to the ability of an alien to "depart from or enter" the United States. Neither addresses visa issuance.

**C.**     **The State Department's Implementation of the Executive Order.**

29.     Following the Supreme Court's order allowing the relevant provisions of the Executive Order to become effective in part, the State Department issued a cable to consular officials directing that diversity visas should be denied to persons subject to the Executive Order's suspension on entry—even if the diversity visa applicant is otherwise eligible to receive the visa.

30.     Specifically, the cable read as follows (emphasis added):

> 8. (SBU) For Diversity Visa (DV) applicants already scheduled for interviews falling after the E.O. implementation date of 8:00 p.m. EDT June 29, 2017, post should interview the applicants.  Posts should interview applicants following these procedures:
>
>> a.) ***Officers should first determine whether the applicant is eligible for the DV, without regard to the E.O.***  If the applicant is not eligible, the application should be refused according to standard procedures.
>>
>> b.) ***If an applicant is found otherwise eligible, the consular officer will need to determine during the interview whether the applicant is exempt from the E.O.'s suspension of entry provision*** (see paragraphs 10-13 [addressing *inter alia* the Supreme Court's bona fide relationship standard]), and if not, whether the applicant qualifies for a waiver (paragraphs 14 and 15 [addressing a discretionary waiver provision of the Executive                                                          Order]).
>>
>> c.) ***DV applicants who are not exempt from the E.O.'s suspension of entry provision and who do not qualify for a waiver should be refused 221(g)*** and the consular officer should request an advisory opinion from VO/L/A following     current     guidance     in     9     FAM     304.3-1.
>
> Based on the Department's experience with the DV program, we anticipate that very few DV applicants are likely to be exempt from the E.O.'s suspension of entry or to qualify for a waiver. [Consular Affairs] will notify DV applicants from the affected nationalities with scheduled interviews of the additional criteria to allow the potential applicants to determine whether they wish to pursue their application.

9.  (SBU) The Kentucky Consular Center (KCC) will continue to schedule additional DV-2017 appointments for cases in which the principal applicant is from one of these six nationalities. ***While the Department is mindful of the requirement to issue Diversity Visas prior to the end of the Fiscal Year on September 30, direction and guidance to resume normal processing of visas following the 90-day suspension will be sent [in a separate cable].***

31.     The State Department's reference in paragraph 8(c) of the cable to "221(g)" is a reference to 8 U.S.C. § 1201(g), which provides: "No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law."  The State Department's policy, therefore, is that the Executive Order makes individuals covered by the Order ineligible to receive a diversity visa.

32.     The State Department's policy is illegal, and consular officials' refusal to issue a visa to otherwise eligible applicants violates their non-discretionary duty.  Consular officials may refuse a visa "only upon a ground specifically set out in the law or implementing regulations." 22 C.F.R. § 40.6.  However, the Executive Order does not make diversity visa applicants ineligible to receive a visa.  Rather, the statutory authority cited by the President in promulgating the Executive Order concerns *entry* into the United States, not visa issuance.  Under the Immigration and Nationality Act, possessing a visa does not automatically entitle one to entry; and conversely, being subject to a temporary suspension of entry does not make one ineligible to receive a visa.  Nor is the issuance of a visa during a temporary suspension of entry pointless, as the visa could be used to enter the United States once the temporary suspension on entry is lifted.

9

33.     The State Department's policy will have draconian consequences, and impose irreparable harm, on otherwise-eligible diversity visa applicants to whom the Executive Order applies.  Although the Executive Order's six-country suspension of entry will expire on September 24, 2017, it is highly doubtful that these individuals will be able to have their visa applications reconsidered, and their visas issued, prior to the end of the fiscal year on September 30, 2017.  And if their visas are not issued by September 30, 2017, their slot in the diversity visa program will expire and they will need to reenter the lottery—with a vanishingly small chance of winning a second time.

**D.     Plaintiffs-Petitioners.**

34.     Plaintiffs are diversity visa lottery winners, and their immediate family members, from countries covered by the Executive Order and subject to its suspension on entry.  They have not established any bona fide relationship with any person or entity in the United States that would qualify them for an exception to the Executive Order.

35.     P.K., Mr. Sorkhab, Mr. Almaqrami, and Mr. Furooz entered the 2017 diversity visa lottery, and in May 2016, they each received a letter from the United States Department of State stating that they had been randomly selected as part of the diversity visa program.

36.     In September 2016, P.K. received another letter from the United States Department of State scheduling him for an interview (which took place at the U.S. Embassy in Armenia) on November 8, 2016.  The interview required him to travel with his entire family from Iran to Armenia.  At the interview, the consular officer told him that he had a very good case.  P.K. does not have family in the United States, nor has he established any relationship with a U.S. entity, that would qualify under the Supreme Court's "bona fide relationship" standard.

37.     In October 2016, Mr. Sorkhab received another letter from the United States

Department of State scheduling him for an interview (which took place at the U.S. Embassy in

Abu Dhabi) on December 14, 2016.  The interview required him to travel with his entire family

from Iran to Abu Dhabi.  Mr. Sorkhab and his family returned to the U.S. Embassy in Abu Dhabi

for a second interview in June 2017, after his new baby was born. To the best of his knowledge,

he is eligible to receive a visa.  Mr. Sorkhab does not have any close relatives who live in the

United States, and does not currently have a job offer or other connections to an organization in

the United States that would qualify under the Supreme Court's "bona fide relationship"

standard.

38.     Mr. Almaqrami had his interview on May 25, 2017. He traveled from India,

where he is living for his doctoral studies, to Yemen to retrieve all of the necessary documents,

and then came back to India for additional documents.  He then went to Malaysia for his

interview.  He did not understand why he was not issued a visa, until he received a letter from

the State Department on July 12, 2017, stating: "a visa applicant from one of the six affected

countries who does not have a credible claim of a bona fide relationship with a person (i.e., a

close familial relationship) in the United States or of a bona fide relationship with an entity in the

United States (which relationship is formal, documented, and formed in the ordinary course,

rather than to evade the Executive Order) is ineligible for a visa." Mr. Almaqrami does not have

any family in the United States, nor does he currently have a job offer or other connections to an

organization in the United States that would qualify under the Supreme Court's "bona fide

relationship" standard.

39.     Mr. Furooz had his interviews on December 15, 2016 and June 21, 2017 in Kuala

Lumpur, Malaysia. On July 7, 2017, he received a letter from the U.S. Embassy returning his

passport without a visa. The letter stated that his case would remain in administrative processing, and that he would be notified when the Embassy could proceed with his case. The reason given was: "due to nationality from one of 6 countries affected by EO13780 sec 2(c)."

40.   Plaintiffs are statutorily eligible to receive the visa. P.K., for example, has a bachelor's degree in mechanical engineering and has worked as an engineer for 18 years. Mr. Sorkhab has a bachelor's degree in chemical engineering and has worked as an engineer for 19 years. Mr. Almaqrami has a master's degree in linguistics and is currently a Ph.D. student in linguistics at Annamalai University in India. Mr. Furooz has graduated high school and is currently studying educational technology at Ibb University in Yemen. They do not fall within any of the grounds of inadmissibility under 8 U.S.C. § 1182(a). Nor do N.H., P.K.'s spouse; their children M.K.1 and M.K.2; Neda Heidari Dehkordi, Mr. Sorkhab's spouse; or their children Y.S.1, Y.S.2, and Y.S.3. However, the State Department is refusing to issue their visas based on its illegal implementation of the Executive Order. Accordingly, Plaintiffs petition for a writ of mandamus directing consular officials to issue diversity visas to applicants who are statutorily eligible to receive them; for declaratory relief declaring that the State Department's application of the Executive Order to refuse diversity visas to otherwise-eligible applicants is arbitrary, capricious, an abuse of discretion, and in violation of law; and for injunctive relief enjoining the State Department from refusing a diversity visa based on the Executive Order's suspension of entry.

## CLASS ACTION ALLEGATIONS

41.   Plaintiffs reallege the foregoing allegations as if set forth fully herein.

42.     Plaintiffs bring this class action on behalf of themselves and all others similarly situated for the purpose of asserting claims alleged in this Petition and Complaint on a common basis.

43.     The proposed class is defined under Rule 23(b)(1)(A), (b)(2), and b)(3) as all persons who:  (a) have been selected, or are the spouse or child of someone who has been selected, in the diversity visa lottery for FY2017 and has submitted an application to receive a diversity immigrant visa, but has not yet received the visa; and (b) are subject to the Executive Order and do not qualify for the "bona fide relationship" exception, and therefore are prohibited from entering the United States until the Executive Order expires in late September 2017.

44.     There are likely hundreds, and potentially thousands, of members of the proposed class.  The total number of class members is such that the joinder of claims of all class members would be impracticable.

45.     Plaintiffs' claims are typical of the claims of the proposed class, and Plaintiffs will fairly and adequately protect the interests of the proposed class.  Plaintiffs have no relevant conflicts of interest with other members of the proposed class and have retained competent and experienced counsel.

46.     There are multiple questions of law and fact common to the members of the proposed class.  These common questions include, but are not limited to, whether consular officials have a non-discretionary duty to issue immigrant visas to diversity visa applicants who are statutorily eligible to receive them, notwithstanding the Executive Order; and whether the State Department order purporting to direct that such visas be refused is arbitrary, capricious, or otherwise in violation of law.

47.     Individual actions in this case would create a risk of inconsistent adjudications that would result in incompatible standards of conduct for the government. Some diversity visa plaintiffs might prevail in their challenge and escape the effect of the policy while other might remain subject to it.

48.     The government has created a policy that applies to the class as a whole on grounds that apply generally to them, namely their nationality in one of the six identified countries. As a result, the requested injunctive, declaratory and other relief is appropriate for the class as a whole to eliminate the illegal effects of the policy.

49.     Common questions of law predominate in this case. The legality of the policy is the central issue in this case and applies identically to all class members. A class action is also superior to any other method for fairly and efficiently adjudicating the controversy. Individual actions by particular members of the class are unlikely to have particular interest in controlling the litigation, this district court is a particularly appropriate forum given the nature of the legal issues and the identity of the parties, and the class action will not be difficult to manage given the limited scope of the issues involved.

## CAUSES OF ACTION

### COUNT ONE (Administrative Procedure Act)

50.     Plaintiffs reallege the foregoing allegations as if set forth fully herein.

51.     The State Department's policy, directing consular officials to deny diversity immigrant visas to statutorily eligible applicants whose entry to the United States would temporarily be prohibited under the Executive Order, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

14

52.     The State Department policy is final agency action. It is the consummation of the State Department's process on this matter. The agency has nothing further to do in order to issue direction to consular officials. Furthermore, rights and obligations have been determined by the policy and legal consequences will flow from it. The agency has denied and will continue to refuse to issue visas as a result of its policy purporting to implement the Executive Order.

53.     Under 22 C.F.R. § 40.6, a consular official may refuse a visa "only upon a ground specifically set out in the law or implementing regulations."

54.     Under 8 U.S.C. § 1152(a)(1)(A), consular officials are prohibited from discriminating against any individual in the issuance of an immigrant visa because of the person's nationality, except as expressly authorized by Congress.

55.     The Executive Order does not purport to prohibit the issuance of diversity visas that must be issued by September 30.  Rather, it imposes a temporary bar on entrance for certain nationals of six countries, which is due to expire in late September 2017.

56.     Accordingly, the State Department policy directing consular officials to refuse immigrant visas to individuals who are statutorily eligible to receive a visa, on the ground that they are covered by the Executive Order and so temporarily prohibited from entering the United States, is not authorized by any governing law, and is arbitrary, capricious, an abuse of discretion, and in violation of law.

## COUNT TWO (Mandamus)

57.     Plaintiffs reallege the foregoing allegations as if set forth fully herein.

58.     Defendants/Respondents John Does #1-50, who are the unknown consular officials responsible for processing and issuing diversity visas, have a clear and non-discretionary duty to adjudicate applications and issue visas to individuals who are eligible to

receive them and who are not inadmissible under 8 U.S.C. § 1182(a), so long as visas remain available.

59.     Under 22 C.F.R. § 42.81(a), a "consular officer must either issue or refuse the visa . . . ." Moreover, "[e]very refusal must be in conformance with the provisions of 22 C.F.R. 40.6." *Id.*

60.     Under 22 C.F.R. § 40.6, a consular official may refuse a visa "only upon a ground specifically set out in the law or implementing regulations."

61.     Under 8 U.S.C. § 1152(a)(1)(A), consular officials are prohibited from discriminating against any individual in the issuance of an immigrant visa because of the person's nationality, except as expressly authorized by Congress.

62.     The Executive Order does not purport to prohibit the issuance of diversity visas that must be issued by September 30. It simply issues a temporary bar on entrance for certain nationals of six countries, which is due to expire in late September 2017.

63.     Consular official Defendants have a mandatory duty to adjudicate diversity immigrant visa applications and issue diversity immigrant visas to statutorily eligible individuals, and there is no legal bar to doing so. Accordingly, Plaintiffs have a clear and indisputable right to relief, and the consular official Defendants have a clear and non-discretionary duty to act.

64.     No alternative remedy exists to compel action by the consular official Defendants John Does #1-50.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully prays that this Court:

A.     Declare that the State Department's policy of deeming visa applicants from Iran, Syria, Sudan, Somalia, Yemen, and Libya ineligible for a diversity visa on account of the

Executive Order, even when those applicants are statutorily eligible, is arbitrary, capricious, and otherwise in violation of law;

      B.      Enjoin the State Department and its employees, officers, and agents from implementing the policy of refusing diversity visas to applicants from Iran, Syria, Sudan, Somalia, Yemen, and Libya, notwithstanding these applicants' statutory eligibility;

      C.      Issue a writ of mandamus to Defendants John Does #1-50 directing that these consular officials adjudicate diversity immigrant visa applications and issue diversity immigrant visas to visa applicants from Iran, Syria, Sudan, Somalia, Yemen, and Libya who are statutorily eligible to receive a visa before September 30, 2017; and

      D.      Award any other relief the Court deems just and proper.

July 31, 2017

Respectfully submitted,

Samer E. Khalaf (pro hac vice pending)
Abed A. Ayoub
Yolanda Rondon
AMERICAN-ARAB ANTI-DISCRIMINATION
COMMITTEE
1705 DeSales Street, N.W., Suite 500
Washington, D.C. 20036
Tel: 202-244-2990
Skhalaf@adc.org

Matthew E. Price  (DC Bar #996158)
Max J. Minzner (pro hac vice pending)
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
Tel. 202-639-6000
Fax: 202-639-6066
Email: mprice@jenner.com
        mminzner@jenner.com

Karen C. Tumlin
Esther Sung
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd, Suite 1600
Los Angeles, CA 90010
(213) 639-3900
tumlin@nilc.org
sung@nilc.org

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600
Fax: (212) 549-2654
ojadwat@aclu.org

Justin B. Cox
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
(678) 279-5441
cox@nilc.org

Cody H. Wofsy
Spencer E. Amdur
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770
Fax: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
  OF THE DISTRICT OF COLUMBIA
4301 Connecticut Avenue, NW, Suite 434
Washington, DC 20008
202-457-0800
aspitzer@acludc.org

*Counsel for Plaintiffs*

18