IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

P.K., *et al.*,
on behalf of themselves and all others
similarly situated,

        Plaintiffs/Petitioners,

v.

REX W. TILLERSON, *et al.*,

        Defendants/Respondents.

No. _____

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

## INTRODUCTION

The State Department has adopted a uniform policy of refusing diversity immigrant visas to certain applicants who are statutorily eligible to receive such a visa, on the ground that Executive Order No. 13,780, *see* 82 Fed. Reg. 13,209 (Mar. 6, 2017) ("Executive Order"), prohibits their entry into the United States. But Section 2(c) of the Executive Order prohibits entry, not visa issuance; and consular officials have a mandatory duty to issue up to 50,000 diversity visas each Fiscal Year to individuals who are statutorily eligible and who are selected in the diversity visa lottery. Accordingly, the State Department's policy directing that diversity visas *not* be issued to these individuals is arbitrary, capricious, and unlawful agency action under the Administrative Procedure Act ("APA"). Consular officials' failure to adjudicate the applications of diversity visa applicants and to issue visas to individuals who are statutorily eligible to receive them is also a violation of these officials' non-discretionary duty.

1

Plaintiffs have filed this class action to challenge the State Department's policy and consular officials' failure to perform their mandatory duty. They seek a declaration that the State Department policy is unlawful; an injunction prohibiting the State Department and its officials, employees, and agents from implementing the State Department policy; and the issuance of a writ of mandamus ordering consular officials to adjudicate the diversity visa applications of individuals covered by the Executive Order and to issue visas to those who are statutorily eligible to receive them, until the annual 50,000-visa cap has been reached.

This action satisfies the requirements of Fed. R. Civ. P. 23 for class actions. Class members are numerous, their claims all share a core common question of law, the Plaintiffs' claims are typical of those of the class, and the Plaintiffs adequately represent the class. Thus, the requirements of Rule 23(a) are satisfied. So too are the requirements of Rule 23(b)(1), (b)(2), and (b)(3). All class members are subject to the same uniform policy, and the relief sought is appropriate for the class as a whole. Moreover, individual adjudications would create the risk of inconsistent adjudications that could establish incompatible standards of conduct for the government.

## FACTUAL BACKGROUND

Plaintiffs all were selected (or are the spouse or child of individuals selected) as "winners" of the diversity visa lottery for FY2017, meaning that they would be awarded a diversity visa provided that they satisfied the eligibility requirements, were not inadmissible under 8 U.S.C. § 1182(a), and the 50,000-visa cap had not been reached. *See* Ex. B to Mem. in support of Preliminary Injunction ¶ 5 ("PI Ex.. B"); Ex. C to Mem. in support of Preliminary Injunction ¶ 5 ("PI Ex. C"); Ex. D to Mem. in support of Preliminary Injunction ¶ 3 ("PI Ex. D"); Ex. E to Mem. in support of Preliminary Injunction ¶ 3 ("PI Ex. E"). Plaintiffs (or their

immediate family member who was selected) all satisfy the eligibility requirements—namely, that they have either graduated high school or have worked for more than two years in a qualifying profession, 8 U.S.C. § 1153(c)(2). *See* PI Ex. B ¶ 2; PI Ex. C ¶ 2; PI Ex. D ¶ 2; PI Ex. E ¶ 2. To their knowledge, they are not inadmissible under 8 U.S.C. § 1182. *See* PI Ex. B ¶ 11; PI Ex. C ¶ 12; PI Ex. D ¶ 6. Accordingly, under the statute and regulations, they are entitled to receive a diversity visa, provided that the 50,000-visa annual cap has not been reached—and, to date, it has not.

However, Plaintiffs also are all nationals of one of the six countries (Iran, Libya, Somalia, Sudan, Syria, and Yemen) to which the Executive Order applies. *See* PI Ex. B ¶ 2; PI Ex. C ¶ 2; PI Ex. D ¶ 2; PI Ex. E ¶ 2. Under Section 2(c) of the Executive Order, the entry of nationals from these countries is suspended for a temporary period of 90 days, beginning on the provision's effective date. The Executive Order was initially enjoined, but the U.S. Supreme Court stayed the injunction in late June 2017, except as applied to individuals with a bona fide relationship with any person or entity in the United States. *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2088-89 (2017). Plaintiffs, however, lack any such relationship and thus do not qualify for the exception. *See* PI Ex. B ¶ 13; PI Ex. C ¶ 13; PI Ex. D ¶ 6. Accordingly, the Executive Order is now in effect as applied to Plaintiffs and prohibits their entry until late September 2017.

Following the Supreme Court's decision partially staying the injunctions, news reports revealed the existence of a State Department cable directed to all diplomatic and consular posts identifying the procedures to be followed concerning visa issuance in light of the Executive Order. With respect to diversity visas, the cable provides consular officials the following guidance:

> 8. (SBU) For Diversity Visa (DV) applicants already scheduled for interviews falling after the E.O. implementation date of 8:00 p.m. EDT June 29, 2017, post should interview the applicants. Posts should interview applicants following these procedures:
>
>> a.) Officers should first determine whether the applicant is eligible for the DV, without regard to the E.O. If the applicant is not eligible, the application should be refused according to standard procedures.
>>
>> b.) If an applicant is found otherwise eligible, the consular officer will need to determine during the interview whether the applicant is exempt from the E.O.'s suspension of entry provision (see paragraphs 10-13), and if not, whether the applicant qualifies for a waiver (paragraphs 14 and 15).
>>
>> c.) DV applicants who are not exempt from the E.O.'s suspension of entry provision and who do not qualify for a waiver should be refused 221(g) and the consular officer should request an advisory opinion from VO/L/A following current guidance in 9 FAM 304.3-1.
>
> Based on the Department's experience with the DV program, we anticipate that very few DV applicants are likely to be exempt from the E.O.'s suspension of entry or to qualify for a waiver. CA will notify DV applicants from the affected nationalities with scheduled interviews of the additional criteria to allow the potential applicants to determine whether they wish to pursue their application.
>
> 9. (SBU) The Kentucky Consular Center (KCC) will continue to schedule additional DV-2017 appointments for cases in which the principal applicant is from one of these six nationalities. While the Department is mindful of the requirement to issue Diversity Visas prior to the end of the Fiscal Year on September 30, direction and guidance to resume normal processing of visas following the 90-day suspension will be sent septel.

*See* Ex. A to Mem. in support of Preliminary Injunction ¶ 2 ("PI Ex. A) & Ex. A attached thereto.

As this policy reflects, consular officials are directed to "refuse 221(g)" any diversity visa applicant for whom the Executive Order suspends entry. The phrase "refuse 221(g)" refers to Section 221(g) of the INA,8 U.S.C. § 1201(g), which provides: "No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or

4

such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law." The State Department's policy, therefore, is that the Executive Order makes individuals ineligible to enter under the 90-day entry ban also ineligible to receive a diversity visa.

Based on the foregoing, Plaintiffs move to certify a class consisting of all persons who: (a) have been selected, or are the spouse or child of someone who has been selected, in the diversity visa lottery for FY2017 and has submitted an application to receive a diversity immigrant visa, but has not yet received the visa; and (b) are subject to the Executive Order and do not qualify for the "bona fide relationship" exception, and therefore are prohibited from entering the United States until the Executive Order expires in late September 2017.

## ARGUMENT

To obtain class certification, Plaintiffs must satisfy the requirements of Fed. R. Civ. P. 23(a) and one of the subdivisions of Fed. R. Civ. P. 23(b). They meet those requirements.

### A.   Plaintiffs Satisfy the Requirements of Rule 23(a).

Under Rule 23(a), Plaintiffs must demonstrate "(1) the class is so numerous that joinder of all members is impracticable" (numerosity); "(2) there are questions of law or fact common to the class" (commonality); "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class" (typicality); and "(4) the representative parties will fairly and adequately protect the interests of the class" (adequacy of representation). Plaintiffs satisfy each of these requirements.

### 1. Plaintiffs Satisfy Numerosity.

In satisfying numerosity, "[t]here is no specific threshold that must be surpassed." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 239 F.R.D. 9, 25 (D.D.C. 2006). Instead, courts consider, based on the "particularized circumstances of the case," *id.*, whether joinder of all class members is practicable. Here, it is not. Members of the class likely number in thousands—far in excess of the number that courts have concluded is sufficiently large to satisfy the numerosity requirement. *See Johnson v. District of Columbia*, 248 F.R.D. 46, 52 (D.D.C. 2008); *Disability Rights*, 239 F.R.D. at 25 (noting that a class consisting of greater than 40 individuals is sufficiently numerous). A "plaintiff need not provide the exact number of potential class members in order to satisfy this requirement." *Bynum v. District of Columbia*, 214 F.R.D. 27, 33 (D.D.C. 2003).

While the government does not publicly disclose the number of diversity visa lottery recipients from each country until after the fiscal year is over, in past years approximately 10,000 nationals of the six countries covered by the Executive Order were selected in the annual diversity visa lottery.[1] As the State Department cable indicates, "very few [diversity visa] applicants are likely to be exempt from the [Executive Order's] suspension of entry or to qualify for a waiver." *See* PI Ex. A ¶ 2 & Ex. A thereto, at ¶ 8(c). Diversity immigrant visa applicants typically do not have familial relationships in the United States.

Moreover, joinder would not be practicable in this case because class members are located abroad, many have limited English language proficiency, and they are generally

---

[1] In FY2015, the government selected 10,487 lottery entrants who were nationals from the six countries covered by the Executive Order. In FY2014, the number was 9,767. *See* https://travel.state.gov/content/visas/en/immigrate/diversity-visa/diversity-visa-program-statistics.html. Not everyone selected in the lottery receives a visa.

unfamiliar with the American legal system. Thus, it would be extremely difficult for them to sue individually. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (noting that relevant considerations relating to practicability of joinder include "geographic dispersion of class members, financial resources of class members, [and] the ability of claimants to institute individual suits"). Accordingly, the numerosity requirement is met in this case.

### 2.     Plaintiffs Satisfy Commonality.

To satisfy the commonality requirement, Plaintiffs must show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has explained that, to satisfy commonality, class members must share a "common contention [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

The fact that there may be some "factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members." *Bynum*, 214 F.R.D. at 33. "Because the commonality requirement may be satisfied by a single common issue, courts have noted that it is 'often easily met.'" *Disability Rights*, 239 F.R.D. at 26 (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 259 (D.D.C. 2002)). "Additionally, proposed class actions seeking injunctive and declaratory relief, such as this one, by their very nature present common questions of law and fact." *Id.* (internal quotation marks omitted).

The commonality requirement is easily satisfied here. This action challenges a State Department policy that, on its face, applies to every class member; and the challenge is purely legal in nature, concerning the policy's compliance with the governing statutes, regulations, and

7

the Executive Order. A determination by this Court concerning the legality of the State Department's policy would "resolve an issue that is central to the validity of each one of the claims in one stroke," *Wal-Mart*, 564 U.S. at 350—namely, the legality of the State Department's reliance on Section 2(c) of the Executive Order to suspend the processing and issuance of diversity immigrant visas. Accordingly, the commonality requirement is satisfied.

### 3. Plaintiffs Satisfy Typicality.

"Typicality focuses on the similarity of the legal and remedial theories behind the claims of named representatives and those of the putative class." *Chang v. United States*, 217 F.R.D. 262, 272 (D.D.C. 2003) (quotation marks omitted). "[I]f the named plaintiffs' claims are based on the same legal theory as the claims of the other class members, it will suffice to show that the named plaintiffs' injuries arise from the same course of conduct that gives rise to the other class members' claims." *Bynum*, 214 F.R.D. at 35. This "requirement has been liberally construed by courts." *Id.* at 34. Courts find the typicality requirement to be satisfied when plaintiffs' claims are "premised on the legality, vel non, of a policy or practice that is applied to all putative class members." *Chang*, 217 F.R.D. at 272 (internal quotation marks omitted)).

The typicality requirement is met here. Each of the plaintiffs—like each of the other class members—was selected as a winner of the FY2017 diversity immigrant visa lottery, and has an interest in being issued a diversity immigrant visa before the September 30, 2017 deadline. Likewise, each of the plaintiffs—like each of the other class members—is a national of one of the countries subject to the Executive Order's suspension of entry and lacks a bona fide relationship with a person or entity in the United States. Thus, under the State Department's policy, the injury suffered by the plaintiffs is typical of the injury suffered by the class: their

applications will not be processed and their diversity immigrant visas will not be issued on account of the State Department's legally flawed implementation of the Executive Order.

Plaintiffs' claims are "premised on the legality, vel non, of a policy or practice that is applied to all putative class members." *Chang*, 217 F.R.D. at 272 (internal quotation marks omitted). Accordingly, the typicality requirement is satisfied.

### 4. Plaintiffs Adequately Represent the Class.

To demonstrate adequacy of representation, plaintiffs must show the absence of any conflict of interest between themselves and the rest of the class, and that counsel for the class is competent to represent the class. *Johnson*, 248 F.R.D. at 53-54; *Bynum*, 214 F.R.D. at 35. Those requirements are satisfied here.

First, there is no conflict between the plaintiffs and other class members. All have suffered an identical injury due to the presence of a uniform policy that the government has applied to the entire class. This lawsuit challenges that policy, and Plaintiffs' claims concerning the policy's illegality are identical to the claims that would be made by any class member. Additionally, Plaintiffs seek declaratory and injunctive relief that would benefit all class members by restraining the State Department from applying its uniform policy, and by ordering consular officials to process diversity immigrant visas without regard to the Executive Order's temporary suspension of entry. Thus, the Plaintiffs' interests are fully aligned with the interests of the class members.

Second, proposed counsel are competent to represent the class. Plaintiffs' counsel will devote substantial time and resources to the prosecution of this action. *See* Declaration of Matthew E. Price ¶ 9 (attached as Exhibit A); Declaration of Arthur B. Spitzer ¶¶ 9-10 (attached as Exhibit B); Declaration of Karen C. Tumlin ¶¶ 6-7 (attached as Exhibit C); Declaration of

9

Omar C. Jadwat ¶¶ 7-8 (attached as Exhibit D). Together, they have considerable experience in administrative law, immigration law, and class action litigation, and are qualified to represent the class in this action. Ex. A ¶¶ 4-8; Ex. B ¶¶ 4-8; Ex. C ¶¶ 4-5; Ex. D ¶¶ 3-6.

### B. The Proposed Class Is Ascertainable.

Courts in this District have required not only satisfaction of the requirements of Fed. R. Civ. P. 23(a), but also that plaintiffs "establish that the general outlines of the membership of the class are determinable at the outset of the litigation. In other words, the class must be sufficiently definite that it is administratively feasible for the court to determine whether a particular individual is a member." *Pigford v. Glickman*, 182 F.R.D. 341, 346 (D.D.C. 1998) (quotation marks omitted). This is "not designed to be a particularly stringent test." *Id.*

Here, there is no doubt that the proposed class is sufficiently ascertainable. It is defined based on objective criteria: individuals who (a) have been selected, or are the spouse or child of someone who has been selected, in the diversity visa lottery for FY2017 and has submitted an application to receive a diversity immigrant visa, but has not yet received the visa; and (b) are subject to the Executive Order and do not qualify for the "bona fide relationship" exception, and therefore are prohibited from entering the United States until the Executive Order expires in late September 2017. All members of this class are subject to the State Department policy under challenge, according to which their diversity immigrant visas will not be issued, regardless of their statutory eligibility to receive such a visa. *See* PI Ex. A & Ex. A attached thereto. Additionally, all of the records about who is a member of the class is currently within the possession of the government. Certainly, it is "administratively feasible" to determine whether someone falls within the class. *Pigford*, 182 F.R.D. at 346.

### C. The Proposed Class Satisfies the Requirements of Rule 23(b).

Under Rule 23, a class action may be maintained if the requirements of Rule 23(a) are met (as they are here, *see supra*) and *any* of the following conditions are satisfied:

(1) prosecuting separate actions by or against individual class members would create a risk of … inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; …

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy….

Fed. R. Civ. P. 23(b). Here, each of these three conditions are satisfied.

### 1. Rule 23(b)(1) Is Satisfied Because Individual Actions Would Create a Risk of Inconsistent Adjudications.

Even if individual suits were practicable (which they are not), it would be preferable for the issues raised in this suit to be addressed on a class-wide basis. Individual adjudications would create a significant risk of "inconsistent adjudications" that would result in "incompatible standards of conduct" for the government. Some individual plaintiffs might prevail in their challenge to the State Department's uniform policy; other individual plaintiffs might lose. As a result, the government would be able to apply its policy with respect to certain individuals, but not with respect to other identically situated individuals. The Court should avoid the risk of such inconsistent adjudications that would result in incompatible standards of conduct for the government. That risk would be heightened, moreover, if certain plaintiffs were able to establish venue in other judicial districts, introducing the possibility of a circuit court conflict on an issue that needs to be definitively resolved within a matter of weeks. *See Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002) ("In short, the plaintiffs primarily seek declaratory and injunctive

relief. If the court did not certify this case as a class action, there would be a substantial risk that if other potential class members brought separate actions, courts might render "inconsistent or varying adjudications ... which would establish incompatible standards of conduct" for the Navy." (citation omitted)).

### 2. Rule 23(b)(2) Is Satisfied Because the Requested Injunctive or Declaratory Relief Is Appropriate for the Class As a Whole.

The "key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *DL v. District of Columbia*, 713 F.3d 120, 125 (D.C. Cir. 2013) (quotation marks omitted). Rule 23(b)(2) thus applies "only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Id.*

Here, Rule 23(b)(2) plainly authorizes class certification. The requested injunctive and declaratory relief, as well as the requested mandamus relief, turns on a pure question of law concerning the legality of a policy of general applicability, and so a single injunction or declaratory judgment will provide every class member with the requested relief. Indeed, a case like this one is the classic (b)(2) class action: "the defining characteristic of the (b)(2) class is that it seeks declaratory or injunctive relief applicable to the class as a whole." *Eubanks v. Billington*, 110 F.3d 87, 92 (D.C. Cir. 1997). *See also Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) (recognizing the availability of class relief in mandamus actions).

### 3. In the Alternative, a Class Can Be Certified Under Rule 23(b)(3).

In the alternative to certification under Rule 23(b)(1) or Rule 23(b)(2), a class can also be certified in this case under Rule 23(b)(3). However, the notice requirement under Rule 23(b)(3)

is more stringent than that under Rule 23(b)(1) and Rule 23(b)(2), *see* Fed. R. Civ. P. 23(c)(2), and that could result in the need for discovery as to all class members' identity. Plaintiffs wish to avoid such discovery and the potential attendant delays, particularly given the time sensitivity of this case. Accordingly, Plaintiffs request certification under Rule 23(b)(3) only if the Court for some reason denies certification under Rule 23(b)(1) or Rule 23(b)(2).

Rule 23(b)(3) provides that class certification is appropriate if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"Generally speaking, predominance will exist where issues that may be proven or disproven through 'generalized evidence' on a 'simultaneous, class-wide basis' overshadow issues that require examination of each class member's individualized circumstances." *Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 368 (D.D.C. 2011) (quoting *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 262 (D.D.C. 2002)). That requirement is met here. Common questions of law not only predominate over questions affecting individual members, they are the *only* questions the Court will adjudicate.

Likewise, a class action is superior to other available methods for adjudicating the controversy because it is preferable for the government to be bound by a single declaratory and injunctive order, under the supervision of a single court, concerning its generally applicable policy. To Plaintiffs' knowledge, no other litigation has commenced involving class members concerning the claims raised here, and managing a class action should not be difficult. By contrast, requiring individuals to bring multiple individual actions would result in significant

inefficiencies, by forcing the government to litigate the same common issue over and over again, and could lead to inconsistent judgments.

### D. The Court Should Designate Plaintiffs' Counsel as Class Counsel.

Under Fed. R. Civ. P. 23(g)(1), "a court that certifies a class must appoint class counsel." In doing so, a court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Those factors support the designation of Plaintiffs' counsel as class counsel. Counsel has devoted significant time and resources to investigating the facts underlying the government's policy and to preparing a complaint and preliminary injunction papers. Counsel together have experience litigating class actions, and are experienced in the area of immigration law and administrative law. Ex. A ¶¶ 4-8; Ex. B ¶¶ 4-8; Ex. C ¶¶ 4-5; Ex. D ¶¶ 3-6. Counsel are devoted to continuing to spend significant time litigating this case and representing the interests of the class. Ex. A ¶ 9; Ex. B ¶¶ 9-10; Ex. C ¶¶ 6-7; Ex. D ¶¶ 7-8. Finally, this matter is highly time-sensitive. Class members will be irreparably harmed on October 1, 2017, if the Court does not issue injunctive relief before then. The urgency of the case is a factor strongly weighing in favor of designating Plaintiffs' counsel as class counsel, so that the case can move forward as quickly as possible.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for class certification and appoint Plaintiffs' counsel as class counsel.

July 31, 2017

Samer E. Khalaf (pro hac vice pending)
Abed A. Ayoub
Yolanda Rondon
AMERICAN-ARAB ANTI-DISCRIMINATION COMMITTEE
1705 DeSales Street, N.W., Suite 500
Washington, D.C. 20036
Tel: 202-244-2990
Skhalaf@adc.org

Karen C. Tumlin
Esther Sung
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd, Suite 1600
Los Angeles, CA 90010
(213) 639-3900
tumlin@nilc.org
sung@nilc.org

Justin B. Cox
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
(678) 279-5441
cox@nilc.org

Arthur B. Spitzer (D.C. Bar # 235960)
Scott Michelman (D.C. Bar # 1006945)
AMERICAN CIVIL LIBERTIES UNION
 OF THE DISTRICT OF COLUMBIA
4301 Connecticut Avenue, NW, Suite 434
Washington, DC 20008
202-457-0800
aspitzer@acludc.org

Respectfully submitted,

Matthew E. Price  (DC Bar # 996158)
Max J. Minzner (pro hac vice pending)
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
Tel. 202-639-6000
Fax: 202-639-6066
Email: mprice@jenner.com
       mminzner@jenner.com

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600
Fax: (212) 549-2654
ojadwat@aclu.org

Cody H. Wofsy
Spencer E. Amdur
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770
Fax: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org

*Counsel for Plaintiffs*