**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| P.K., *et al.,* | ) | |
| on behalf of themselves and all | ) | |
| others similarly situated, | ) | No. 1:17-cv-01533-TSC |
| | ) | |
| Plaintiffs/Petitioners, | ) | |
| | ) | **REPLY TO OPPOSITION** |
| v. | ) | **TO REQUEST FOR** |
| | ) | **PRELIMINARY INJUNCTION AND** |
| REX W. TILLERSON, *et al.,* | ) | **EMERGENCY MOTION FOR** |
| | ) | **MANDAMUS RELIEF** |
| Defendants/Respondents. | ) | |
| | ) | |
| _____ | ) | |

## INTRODUCTION

A preliminary injunction is appropriate here. Plaintiffs—facing what even Defendants concede is the imminent loss of a precious winning lottery ticket to become Americans-- present narrow claims and seek limited relief, tailored to redress the irreparable harm they face. Only equitable action by this Court can preserve this opportunity.[1] Defendants, in contrast, rely on incorrect interpretations of the statutes and a decision of the Supreme Court.

Plaintiffs are likely to succeed on the merits of their claims. Nothing in the statute or regulations support refusing visas based on an entry prohibition of the type in the Executive Order or national origin. Moreover, nothing that has happened, or will happen, in the Supreme

---

[1] Since initiating the lawsuit, two of the plaintiffs have presented evidence of relationships that they hope might establish a "bona fide relationship" exempting them from the Executive Order. However, they have not yet been successful. A district court held that qualifying family relationships include cousins. State v. Trump, No. CV 17-00050 DKW-KSC, 2017 WL 2989048, at *10 (D. Haw. July 13, 2017); https://www.dhs.gov/news/2017/06/29/frequently-asked-questions-protecting-nation-foreign-terrorist-entry-united-states.  The government has taken a contrary view and appealed that decision to the Ninth Circuit. Trump v. Hawaii, No. 16-1540, 2017 WL 3045234 (U.S. July 19, 2017).

1

Court bars this action because Plaintiffs here do not seek to invalidate the Executive Order or permission to enter the United States prior to the expiration of the entry ban. Similarly, the government's consular nonreviewability argument fails because of the type of claims raised here. Plaintiffs challenge the policy determination of the State Department, not individual consular decisions, and Plaintiffs still have pending visa applications undergoing administrative processing. In such situations, courts have routinely concluded consular nonreviewability does not apply. Finally, Plaintiffs have demonstrated irreparable harm and the balance of equities and the public interest support the requested injunction.

## ARGUMENT

## I.      Plaintiffs are Likely To Succeed on the Merits

The government argues that Plaintiffs are not likely to succeed on the merits of their claim. They are incorrect. 22 C.F.R § 42.81(a) mandates that when presented with a properly completed visa application, a "consular officer must either issue or refuse the visa under INA 212(a) or INA 221(g) or other applicable law. Every refusal must be in conformance with the provisions of 22 CFR 40.6." Section 40.6 states that visas "can be refused only upon a ground specifically set out in the law or implementing regulations." 22 C.F.R § 40.6. There is no such ground in statute or regulation that applies in this case.

Rather, Defendants are refusing to issue visas based on national origin—individuals from the six banned countries are presumptively denied visas, while nationals of other countries are not. Not only is national origin not an authorized basis for visa refusal under Section 40.6, refusing a visa for this reason is specifically prohibited by the statute. Denying visas on this basis violates 8 U.S.C. § 1152(a)(1)(A) which bars discrimination in visa issuance based on national origin.

The government claims that it is not denying visas based on national origin, but solely based on the entry restriction created by the Executive Order. In other words, the discrimination based on national origin in visa issuance is a mere side effect of the entry ban. This argument fails.

As an initial matter, the Executive Order does not mandate or authorize denying the visas in this case. Section 2(c) only halts "the entry into the United States" of those subject to its scope. It does not purport to bar the issuance of any visa.[2] The Immigration and Nationality Act repeatedly recognizes the distinction between the two government actions required for non-citizens coming the United States – the initial step of issuing a visa and the subsequent step of entering the country. The Executive Order reflects this distinction and only purports to bar the second step by prohibiting entry.

Moreover, Section 212(f) entry prohibitions like the Executive Order are by statute simply not a basis for denying a visa to Plaintiffs.  Section 212 of the Immigration and Nationality Act is quite clear. 8 U.S.C. § 1182. Section 212(a) establishes numerous categories of aliens who are *both* ineligible to enter *and* ineligible to receive a visa. Section 212(f), the basis for the Executive Order, only identifies a category of aliens who are ineligible only to *enter*. The

---

[2] The history of the orders demonstrate that this choice was hardly accidental. The predecessor order, Executive Order 13769, contained comparable operative language in the relevant Section but a different title. The prior version read "Suspension of Issuance of Visas and Other Immigration Benefits to Nationals of Countries of Particular Concern." In contrast, the Executive Order retitled that section and it now reads "Temporary Suspension of Entry for Nationals of Countries of Particular Concern."

contrast in the language of the two provisions is stark, underscoring that the latter limits entry but not eligibility for a visa.

To support its contrary interpretation, the government misreads the opening language of Section 1182(a), which provides that "aliens who are inadmissible under the following paragraphs are ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). The government contends that Section 212(f), 8 U.S.C. § 1182(f), is one of the "following paragraphs," such that Section 212(f) establishes ineligibility for a visa. But that interpretation is not consistent with the statutory text and structure.

The "following paragraphs" are the ten numbered paragraphs within Section 1182(a) that specifically make certain categories of aliens "inadmissible." 8 U.S.C. § 1182(a)(1)-(10). They do not include the other lettered subsections such as 8 U.S.C. § 1182(f). First, the "following paragraphs" language was placed under lettered section (a), making clear that it applies to the paragraphs following within subsection (a).  Second, the grammar of subsections (a) and (f) point out the flaw with the government's reading.  The numbered paragraphs under subsection (a) repeatedly follow the same pattern: A class of noncitizens is defined and then described as inadmissible.  That fits perfectly with subsection (a)'s overall provision that "aliens who are inadmissible under the following paragraphs" are ineligible for visas as well as entry.  But Section 212(f) does not use the term inadmissible at all, instead separately authorizing a ban on entry.  The government's attempt to fit 212(f) in to the language of 212(a) thus warps the statutory language beyond recognition.

The remainder of the lettered subsections of the statute makes that conclusion abundantly clear by referencing back to the inadmissibility provisions of subsection (a). *See* 8 U.S.C. § 1182(b) (mandating written notice to any "alien to be inadmissible under subsection (a)"); 8

U.S.C. §§ 1182(k), (l) (providing for waiver of certain inadmissibility conditions in subsection (a)). Indeed, *no provision* of Section 1182, outside of 1182(a), defines any group of noncitizens as "inadmissible." Just like subsection (f), these other lettered subsections are not "following paragraphs" within the meaning of subsection (a) that make individuals inadmissible and thus ineligible to receive visas.

The government only cites one case in support of its statutory interpretation, *Castenda-Gonzalez v. INS*, 564 F.2d 417 (D.C. Cir. 1977). The court there, though, describes the statute in precisely the way Plaintiffs read the provision. It states that 8 U.S.C. § 1201(g) "delegates the authority to issue visas to consular offices and directs them not to issue visas to any alien who falls within *one of the excludable classes described in section 212(a).*" *Id.* at 426. The Court of Appeals only identified 8 U.S.C. § 1182(a), not any other provision of the statute, as a reason to deny a visa; *see also* 22 C.F.R § 42.81(a) (authorizing the denial of visas based on Section 212(a) without mentioning any other subsection, including 212(f)).

For the same reason, the government's claim that Plaintiffs' argument would mean it would need to issue visas broadly to inadmissible aliens, including criminals, terrorists, and smugglers, is without merit. All of those provisions fall within 8 U.S.C. § 1182(a), which, as already explained, makes individuals both ineligible to receive visas and ineligible to enter. Section 1182 does not support the government's claim that aliens ineligible to enter under Section 212(f) may not receive a visa. Nor does any other statutory or regulatory provision justify refusing a visa on that basis. Since visas "can be refused 22 C.F.R § 40.6, only upon a

ground specifically set out in the law or implementing regulations," 22 C.F.R § 40.6, that lack of statutory or regulatory support is fatal to the government's argument.

The government relies on the Foreign Affairs Manual and its statement that Section 212(f) is a basis for denying a visa. But the Foreign Affairs Manual is neither a statute nor a regulation, so cannot justify a visa denial.  22 C.F.R § 40.6.  Nor does it receive deference under *Chevron*. *Scales v. INS*, 232 F.3d 1159, 1166 (9th Cir. 2000). Interpretive statements of this type have force "only to the extent that those interpretations have the 'power to persuade'." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Here the interpretation has no persuasive force – the government identifies no reasoned argument in the Foreign Affairs Manual to support the claim that Section 212(f) inadmissibility is a basis to refuse a visa. It is a mere conclusion that makes no effort to be persuasive. *Cf. American Radio Relay League, Inc. v. FCC*, 524 F.3d 227, 241 (D.C. Cir. 2008) (mere conclusory statement does not provide a "discernable path to which the court may defer"). Because that conclusion is inconsistent with the statute and regulations, it should be rejected.

Equally significant, the Section 212(f) prohibition in this case is quite different than prior determinations. Prior prohibitions under Section 212(f) have typically prohibited the entry of small groups of individuals based on their own conduct, frequently for life. *Hawaii*, 859 F.3d at 778-79. Denying a visa to individuals who will never be able to enter the country as a result of a Section 212(f) order is quite different than denying a visa to individuals who are subject to an Executive Order that expires soon under its own terms. The government argues that it would make little sense to issue a visa to an individual unable to enter but, as this case demonstrates, it makes perfect sense for these Plaintiffs. If they receive visas prior to September 30, they can enter after the entry ban expires and immigrate to the United States.  What makes no sense is the

government's insistence on denying visas to individuals who are otherwise eligible; will be allowed to enter the country in a matter of weeks under the Executive Order's own terms; yet, absent Court intervention, will forever lose the chance to become Americans for no discernable reason.

## II.     The Supreme Court's Stay Does Not Preclude These Claims

The government argues that a preliminary injunction is not appropriate given the decision of the Supreme Court in *Trump v. International Refugee Assistance Project*, 137 S. Ct. 2080 (2017) (per curiam). They are incorrect. Nothing in the Supreme Court's decision determines the outcome here. As an initial matter, that case could not have a preclusive effect on Plaintiffs. They were not parties to that litigation and are not subject to any preclusive consequences. *Taylor v. Sturgell*, 553 U.S. 880 (2008). The decision in *Trump* only has an impact through the ordinary operation of any precedential decision. This Court must ask: Did the Supreme Court decide the question here?

It did not. The *Trump* holding is entirely about the ability to enter the country. The Court never discussed the question of issuing visas and repeatedly emphasized that the only issues before it relate to entry into the United States. *See Trump*, 137 S. Ct. at 2087 ("We now turn to the preliminary injunctions barring enforcement of the § 2(c) *entry* suspension."); *id.* at 2088 ("Denying *entry* to such a foreign national does not burden any American party by reason of that party's relationship with the foreign national."); *id.* ("[A] nonprofit group devoted to immigration issues may not contact foreign nationals from the designated countries, add them to client lists, and then secure their *entry* by claiming injury from their exclusion."). Consistent with the limited scope of the Executive Order, nothing in the text of the opinion indicates that the Court was deciding any matters relating to issuing visas.

The reasoning also supports this conclusion. The Court balanced the impact of denying entry on the plaintiffs against the purported national security benefits of denying entry. *Id.* at 2087-88. Neither side of that balance reflects a decision on the equitable balance from denying visas here. The national security concerns supporting the court's conclusion in *Trump* are absent here because the requested preliminary injunction would not permit entry. Additionally, the harm of denying a visa to diversity visa lottery winners is just different than the type of harm to plaintiffs in *Trump*. As a result, the Supreme Court has not yet decided the issues in this case.

Similarly, no future development in the Supreme Court litigation will have an impact on this case. On the practical side, the September 30 deadline, combined with the 90-day duration of the entry ban, renders irrelevant for purposes of this case any decision of the Supreme Court. As of October 1, 2017, before the Supreme Court hears oral arguments, Plaintiffs will be free from the limitations of the entry ban because it will have expired. If they have a visa in hand, they will be able to immigrate to the United States. If they do not, they likely will have lost the opportunity they earned by winning the diversity visa lottery. No issue the Supreme Court subsequently decides will alter that reality.

As a legal matter, the claims before the Supreme Court are distinct from the issues here. Those cases consider whether the Executive Order violates the Establishment Clause, the Immigration and Nationality Act, whether the scope of injunctive relief ordered by the lower court was appropriate, and whether the cases are now moot. All of those issues relate to the validity of the Executive Order. Here—contrary to Defendants' repeated assertions—Plaintiffs do not challenge the Executive Order. Plaintiffs, unlike the litigants in the pending cases in the Supreme Court, do not seek the right for anyone to enter the United States during the pendency

of the entry ban. Because the relief sought in this case is independent of the questions now before the Supreme Court, those cases do not provide a basis to deny the injunction.

## III.    Consular Nonreviewability Does Not Bar Plaintiffs' Requested Relief

The government argues that the doctrine of consular nonreviewability precludes review in this case. That doctrine does not apply.  Consular nonreviewability limits the ability of courts to review a consular official's decision to deny a visa.  *See Saavedra Bruno v. Albright*, 197 F. 3d 1153, 1160 (D.C. Cir. 1999). For two reasons, the doctrine of consular non-reviewability does not bar review here.

*First*, Plaintiffs are not seeking judicial review of a specific consular official's reasons for denying a visa.  They "do not challenge a particular determination in a particular case." *International Union of Bricklayers & Allied Craftsmen v. Meese*, 761 F.2d 798, 801 (D.C. Cir. 1985). Instead, they seek a declaration and injunction that the State Department policy established in the cable violates the law. This Court has jurisdiction to review the legality of State Department policies that consular officials are called upon to implement in specific cases. *International Union of Bricklayers* is instructive.  There, the D.C. Circuit held it had jurisdiction to hear a challenge to State Department and INS policies relating to the processing of nonimmigrant visas. Because the requested relief challenged a policy rather than an individual consular determination, "federal courts have jurisdiction over this type of case to assure that the executive departments abide by the legislatively mandated procedures." *Id.*

Similarly, in *Mulligan v. Schultz*, the Fifth Circuit was presented with a case quite similar to the one here. A group of 62 applicants for immigrant visas brought suit challenging the decision of consular officers not to process their visas applications. 848 F.2d 655, 657 (5th Cir. 1988). The State Department had imposed a set of regulatory restrictions that made their visa

applications untimely. The Court of Appeals reversed the district court's finding that it lacked jurisdiction and held that consular nonreviewability does not apply where plaintiffs "are not challenging the discretion of consuls" in applying the regulations but instead challenge "the authority of the Secretary of State" to promulgate the regulations. *Id.* Like *International Union of Bricklayers* and *Mulligan*, this case involves State Department policy choices, not consular visa determinations. See *also Abourezk v. Reagan*, 785 F.2d 1043, 1051 n.6 (D.C. Cir. 1986) (finding jurisdiction on multiple grounds including that plaintiffs raise "claims concerning the decisions of State Department officials rather than consular officers abroad"). *Cf. Legal Assistance v. Vietnamese Asylum Seekers v. Department of State*, 45 F.3d 469 (D.C. Cir. 1995) (permitting a challenge to proceed to a State Department policy of refusing to process visa applications), *vacated on other grounds*, 519 U.S. 1 (1996).

*Second,* the doctrine of consular non-reviewability does not apply in this case because the applications for visas remain pending. "[T]he doctrine of consular nonreviewability is not triggered until a consular officer has made a decision with respect to a particular visa application." *Nine Iraqi Allies Under Serious Threat v. Kerry*, 168 F. Supp. 3d 268, 290-91 (D.D.C. 2016). *See also Patel v. Reno*, 134 F.3d 929 (9th Cir. 1997) (jurisdiction exists "when the suit challenges the authority of the consul to take or fail to take an action"). In cases where the government has not yet made a decision, consular nonreviewability is inapplicable. *Nine Iraqi Allies Under Serious Threat*, 168 F. Supp. 3d at 291 (collecting cases).

The government has not yet made a final visa decision for these plaintiffs. For each of them, they have completed the required steps in the application, including an interview, and their visa remains in "administrative processing." ECF No. 2-3 ¶ 9; ECF No. 2-4  ¶ 10; ECF No. 2-5 ¶ 6 & Ex. B; ECF No. 2-7 ¶ 7.  Administrative processing is exactly what the name connotes –

an intermediate status where the visa application is pending. At the conclusion of "administrative processing," a visa may be issued or the visa application may be denied.

For example, Plaintiff Almaqrami received an email from the Embassy in Kuala Lumpur on July 12, 2017 noting that he has "a diversity visa (DV) application *pending* at the U.S. embassy in Kuala Lumpur." ECF No. 2-5 Ex. B (emphasis added). The email claims that diversity visa applicants from the six identified nations are not eligible for visas as a result of the Executive Order. *Id.* As a national of that country, unless he can meet the bona fide relationship test, his "*application will remain in administrative processing during the 90-day period of this travel restriction*. As a reminder, all diversity visa applications will expire on October 1, 2017. Therefore, it is plausible that your case will not be issuable due to the Executive Order." *Id.* (emphasis added). This email shows that he has a pending visa application that is eligible for processing except for the challenged policy.

Similarly, Plaintiffs P.K. and Sorkhab provided screenshots of the State Department website describing their status. It reads:

> Your visa case is currently undergoing necessary administrative processing. This processing can take several weeks. Please follow any instructions provided by the Consular Officer at the time of your interview. *If further information is needed, you will be contacted. If your visa application is approved, it will be processed and mailed/available within two business days*.

ECF No. 2-3 Ex. C; ECF No. 2-4 Ex. C (emphasis added). This language makes clear that no visa denial has occurred. The State Department has left open the possibility of seeking additional information from them if necessary and the option of simply issuing a visa without any further information.

Plaintiff Furooz received a form from the United States Embassy in Kuala Lumpur which states that the visa was refused "pending administrative processing. No action from you is

currently required. Your passport and original documents are returned to you. This is a routine

procedure in the U.S. immigrant visa process. *You will be notified when we can proceed with

your case.*" ECF No. 2-6 Ex. C (emphasis added). Indeed, the United States Embassy continues

to seek information from him as part of the visa process. Twenty days after receiving the form,

the embassy asked for and he provided a translated copy of his birth certificate. ECF No. 2-6 ¶ 8.

These statements are consistent with the general description of "administrative

processing" on the State Department website. It reads:

> Some visa applications require further administrative processing, which takes additional
> time after the visa applicant's interview by a consular officer. Applicants are advised of
> this requirement when they apply. Most administrative processing is resolved within 60
> days of the visa interview. When administrative processing is required, the timing will
> vary based on individual circumstances of each case. Visa applicants are reminded to
> apply early for their visa, well in advance of the anticipated travel date.

*See* Administrative Processing Information, U.S. Department of State website, available at

https://travel.state.gov/content/visas/en/general/administrative-processing-information.html

(lasted visited August 9, 2017). As the government communicated to Plaintiffs, their visa

applications remain pending, subject to further processing, and have not been finally adjudicated.

The government contends that, by placing them into administrative processing, it already

has denied Plaintiffs' visa applications.  This Court considered and rejected this precise argument

from the government just last year. In *Nine Iraqi Allies*, plaintiffs sought mandamus to require

the State Department to process their applications for immigrant visas. 168 F. Supp. 3d at 273.

Plaintiffs in that case were also in "administrative processing." The government claimed that

status "is not distinct from a final refusal" and consular nonreviewability barred the claim. *Id.* at

283-84. This Court rejected this wordplay. It reviewed evidence similar to the record here

including the case tracking information available to applicants, documents provided to applicants

as part of the visa application process, emails to applicants, and statements on government

websites describing "administrative processing." *Id.* at 283-289. Considering that evidence, it concluded that "any Plaintiff with an application in 'administrative processing' has not yet received a final decision." *Id.* at 287. The same conclusion applies here and consular nonreviewability does not bar Plaintiffs' claims.

## IV.     Plaintiffs Have Demonstrated Irreparable Harm

The government contends that Plaintiffs do not face harm because Plaintiffs might be ineligible to receive a diversity visa for some other reason. That argument is meritless. Plaintiffs have alleged that they are not aware of any other reason why they might be ineligible and Defendants have done nothing more than speculate that they *might* be denied.  To the best of Plaintiff's knowledge, none of the grounds of inadmissibility set forth in 8 U.S.C. § 1182(a) apply to them, and they satisfy the educational and job experience requirements for a diversity visa.  The government certainly has never identified any ground, other than the challenged policy, on which they might be found ineligible.

Courts have rejected precisely this argument in the standing context. Plaintiffs, of course, need to show an "injury" in order to establish standing. *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012).  When conducting that analysis, the Supreme Court has held that "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing." *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville*, 508 U.S. 656, 666 (1993).

Courts have applied that principle in a range of contexts, including employment discrimination; procurement; election regulations; and so on.  *See, e.g.*, *Adarand Constructors,*

*Inc. v. Pena*, 515 U.S. 200, 211 (1995) (aggrieved party "need not allege that he would have obtained the benefit but for the barrier in order to establish standing" to challenge program favoring minority subcontractors); *Solon Automated Servs., Inc. v. United States*, 658 F. Supp. 28, 31 (D.D.C. 1987) (in procurement context, "[i]t is not necessary for plaintiff to prove it would have won the contract if [the winner's] bid had been rejected" in order to establish standing);; *Clements v. Fashing*, 457 U.S. 957, 962 (1982); *Turner v. Fouche*, 396 U.S. 346, 361 n.23 (1970) (challengers to election restrictions need not show that they would be elected if permitted to run for office in order to establish standing).

Plaintiffs are in the same situation as the challengers in these cases. They do not, as the government asserts, claim some unqualified entitlement to a visa.  Instead, they just seek an order requiring the adjudication of their visa applications, free of the challenged unlawful policy's influence, under the same rules that apply to all other applicants who are seeking one of the 50,000 available visas.  They seek no special preference.  And they need not show that they will ultimately receive a visa to establish harm. It is enough that the barrier currently stands as an obstacle to moving forward in the process.

That harm is also irreparable absent a preliminary injunction. The government itself has acknowledged to Plaintiffs that, as a result of its policy, Plaintiffs' applications will at the very least be delayed under the expiration of the travel ban in late September (if not denied altogether), reducing (if not eliminating) the likelihood of receiving a visa before the September 30 deadline.  *See* ECF No. 2-5 Ex. B (letter from State Department informing Plaintiff that "[a]s a reminder, all diversity visa applications will expire on October 1, 2017. Therefore, it is plausible that your case will not be issuable due to the Executive Order."); ECF No. 2-6 Ex. A ("Under no circumstances can a visa be issued … in your case after September 30 2017.

14

Because of the limited number of visas that may be issued under this program, visas may cease

to be available even before this date.  This is especially true the closer to September 30 an

application or re-application is made."). The government also underscores in its brief that it

cannot issue these visas after October 1. Plaintiffs' loss of their one chance to become Americans

is a clear and irreparable injury.

## V.       The Balance of the Equities and the Public Interest Support Issuing the Injunction

Balanced against the harm to Plaintiffs, the government claims a national security interest

in support of denying the injunction. However, this national security goal, even if credited,

would be completely vindicated by the Supreme Court's decision on the entry ban itself.

Plaintiffs do not seek an order allowing their entry until the expiration of the ban—and, at that

point, the Executive Order itself does not seek to bar them from the country on national security

grounds. The Government gains no additional national security benefit by also denying visas

during the ban period.

Perhaps sensing that it has no even colorable national security basis to refuse to issue

these visas, the government warns without any evidence whatsoever of confusion at the border

were Plaintiffs to seek to travel to the United States during the ban period. That is a red herring.

The government could undertake any number of practical solutions to this problem: clearly

communicating to visa recipients the date on which they may travel; issuing the visas before the

end of the fiscal year but not returning the passports until after the ban expires; or noting in the

visas that they are not valid for use until a certain date.  Weighed against the harms it proposes to

unlawfully impose on Plaintiffs, these or other common-sense solutions are entirely reasonable.

Plaintiffs merely seek to hold the status quo. If the ban on entry expires on its own terms

and no change is made to the process for issuing visas, both plaintiffs and defendants will have

their interests protected. The Executive Branch will have been able to complete the desired review and plaintiffs will have not lost their right to immigrate. Moreover, should circumstances change, the statute makes clear that receiving a visa does not create a right to enter. 8 § 1201(h) ("Nothing in this chapter shall be construed to entitle any alien, to whom a visa or other documentation has been issued, to be admitted" if, upon arrival, "he is found to be inadmissible under this chapter"). Processing the visa applications prevents the harm to Plaintiffs without harming Defendants.

## CONCLUSION

None of the government's arguments have merit. The court should issue the requested preliminary injunction.

August 19, 2017

Respectfully submitted,

<u>    /s/ Matthew E. Price    </u>

Samer E. Khalaf (pro hac vice pending)
Yolanda Rondon
AMERICAN-ARAB ANTI-DISCRIMINATION
COMMITTEE
1705 DeSales Street, N.W., Suite 500
Washington, D.C. 20036
Tel: 202-244-2990
Skhalaf@adc.org

Matthew E. Price  (DC Bar #996158)
Max J. Minzner (pro hac vice)
JENNER & BLOCK LLP
1099 New York Ave. NW Suite 900
Washington, DC 20001
Tel. 202-639-6000
Fax: 202-639-6066
Email: mprice@jenner.com
          mminzner@jenner.com

Karen C. Tumlin
Esther Sung
NATIONAL IMMIGRATION LAW CENTER
3435 Wilshire Blvd, Suite 1600
Los Angeles, CA 90010
(213) 639-3900
tumlin@nilc.org

Justin B. Cox
NATIONAL IMMIGRATION LAW CENTER
PO Box 170208
Atlanta, GA 30317
(678) 279-5441
cox@nilc.org

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600
Fax: (212) 549-2654
ojadwat@aclu.org

Cody H. Wofsy
Spencer E. Amdur
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770
Fax: (415) 395-0950
cwofsy@aclu.org
samdur@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
 OF THE DISTRICT OF COLUMBIA
4301 Connecticut Avenue, NW, Suite 434
Washington, DC 20008
202-457-0800
aspitzer@acludc.org

**CERTIFICATE OF SERVICE**

On August 19, 2017, I caused the foregoing Reply to Opposition to Request for

Preliminary Injunction and Emergency Motion for Mandamus Relief to be served on all counsel

of record via this Court's CM/ECF system.

                                           \_\_\_\_/s/ Matthew E. Price_____
                                           Matthew E. Price (DC Bar # 996158)
                                           JENNER & BLOCK LLP
                                           1099 New York Ave. NW Suite 900
                                           Washington, DC 20001
                                           (202) 639-6873