UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HAMED SUFYAN OTHMAN ALMAQRAMI, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 17-cv-1533 (TSC)<br>) |
| REX W. TILLERSON, *et al.*, | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

**MEMORANDUM OPINION**

Plaintiffs—citizens of Yemen and Iran—allege that Defendants unlawfully failed to process their diversity immigrant visa applications based on President Trump's March 6, 2017 Executive Order. ECF No. 46 (Am. Compl.). Defendants now move to dismiss Plaintiffs' Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. ECF No. 53 (Mot.). For the reasons explained below, the court will GRANT Defendants' motion to dismiss for lack of subject matter jurisdiction.

### I. BACKGROUND

The facts of this case are set forth in more detail in the court's September 29, 2017 Memorandum Opinion regarding Plaintiffs' motion for a preliminary injunction. ECF No. 49 (Mem. Op.) at 1–7. On March 6, 2017, President Trump issued Executive Order 13,780 ("Executive Order"), which imposed, in section 2(c), a 90-day suspension on entry into the United States for nationals of six countries—Iran, Libya, Somalia, Sudan, Syria, and Yemen.

*Protecting the Nation from Foreign Terrorist Entry into the United States*, Exec. Order No. 13780, 82 Fed. Reg. 13209, 13213 (2017).  By the end of March 2017, section 2(c) of the Executive Order was enjoined, and two U.S. Courts of Appeals—the Fourth and Ninth Circuits—largely upheld both injunctions.  *See Int'l Refugee Assistance Project (IRAP) v. Trump*, 857 F.3d 554 (4th Cir. 2017), *cert. granted*, 137 S. Ct. 2080 (2017), and *vacated and remanded sub nom. Trump v. IRAP*, 138 S. Ct. 353 (2017); *Hawaii v. Trump*, 859 F.3d 741 (9th Cir. 2017), *cert. granted sub nom. Trump v. IRAP*, 137 S. Ct. 2080 (2017), and *cert. granted, judgment vacated*, 138 S. Ct. 377 (2017), and *vacated*, 874 F.3d 1112 (9th Cir. 2017).  On June 26, 2017, the U.S. Supreme Court granted a stay in part of the injunctions "with respect to foreign nationals who lack any bona fide relationship with a person or entity in the United States."  *Trump*, 137 S. Ct. at 2087.  In light of the Executive Order and the Supreme Court's stay, the State Department issued a cable advising consular officers to refuse diversity visas to applicants who were not exempt from the Executive Order's suspension of entry provision and who did not qualify for a waiver.  ECF No. 2-2 (State Department Cable) at 3.

On August 3, 2017, Plaintiffs filed a Petition for Mandamus and Complaint for Injunctive and Declaratory Relief, as well as a Motion for Preliminary Injunction, in which they argued that the State Department's cable unlawfully applied President Trump's Executive Order to diversity immigrant visa applicants for fiscal year 2017 ("FY 2017").  In the operative complaint, Plaintiffs allege that: (1) the State Department's practice of requiring diversity visa applicants to provide documentation evidencing a bona fide relationship with the United States was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and that (2) in applying the policy, consular officers violated their clear, non-discretionary duty to issue diversity visas to applicants who are statutorily eligible.  Am. Compl. at 15–17.

In their Motion for Preliminary Injunction, Plaintiffs asked the court to issue an order: (1) enjoining the State Department from implementing the policy set forth in its cable; and (2) requiring consular officers to process Plaintiffs' applications pursuant to the Immigration and Nationality Act. ECF No. 2 (Injunction Mot.) at 10. Plaintiffs subsequently sought additional relief, requesting that this court order the State Department to: (1) process the diversity visas of, and/or issue diversity visas to, eligible applicants who had previously been refused pursuant to the Executive Order under the program for FY 2017, even in excess of the statutory cap and/or past the statutory deadline; or (2) issue diversity visas to eligible 2017 applicants who had been refused pursuant to the Executive Order under the program for fiscal year 2018. ECF No. 43 at 3–4. Alternatively, Plaintiffs asked the court to order the State Department to "reserve any unused visa numbers until after the [Supreme Court's decision]" regarding the legality of the Executive Order. ECF No. 45 at 5.

On September 29, 2017, the court granted in part and denied in part Plaintiffs' motion for a preliminary injunction and emergency mandamus relief. ECF No. 50 (Order, Sept. 29, 2017); Mem. Op. at 17. After reviewing the Fourth and Ninth Circuits' decisions in *IRAP* and *Hawaii*, the court found that the Supreme Court's June 26 decision permitting the Executive Order's execution with respect to individuals without a bona fide relationship with the United States applied not only to entry into the U.S., but to visa issuance as well. Mem. Op. at 8–11. Given the Supreme Court's June 26 decision and the Court's continuing jurisdiction to consider the legality of the Executive Order—including with respect to visa issuance—the court found that it was precluded from finding the State Department's policy illegal and from ordering the State Department to process and issue visas. *Id.* However, the court did invoke its mandamus jurisdiction to grant Plaintiffs' alternative relief, and ordered the Defendants to: (1) report, by

3

October 15, the number of visa numbers returned unused for FY 2017; and (2) hold those visa numbers to process Plaintiffs' visa applications in the event the Supreme Court found the Executive Order to be unlawful. Order, Sept. 29, 2017; Mem. Op. at 15. On October 15, 2017, the State Department complied with part of the court's order, reporting that 27,241 diversity visa numbers were returned unused and that 49,976 diversity visas were issued for FY 2017. ECF No. 52 at 1.

Five days earlier, on October 10, 2017, the Supreme Court found that because section 2(c) of the Executive Order expired by its own terms on September 24, 2017, the appeal in *IRAP* no longer presented a live case or controversy. *Trump v. IRAP*, 138 S. Ct. 353, 353 (2017). Accordingly, the Court vacated the Fourth Circuit's judgment enjoining section 2(c) of the Executive Order, and remanded the case to the Circuit "with instructions to dismiss as moot the challenge to Executive Order No. 13,780." *Id.* Fourteen days later, on October 24, 2017, the Supreme Court dismissed the appeal in *Hawaii* based on the same reasoning and with the same instructions it provided in *IRAP*. *Trump v. Hawaii*, 138 S. Ct. 377, 377 (2017).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. The law presumes that "a cause lies outside [a federal court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Georgiades v. Martin–Trigona*, 729 F.2d 831, 833, n.4 (D.C. Cir. 1984) ("It is the burden of the party claiming subject matter jurisdiction to demonstrate that it exists."). In evaluating a motion to dismiss under Rule 12(b)(1), a court must assume the truth of all factual allegations and must review

"'the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). Nevertheless, "'the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the [c]ourt accept plaintiff's legal conclusions.'" *Disner v. United States*, 888 F. Supp. 2d 83, 87 (D.D.C. 2012) (quoting *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006)). Additionally, a court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citation omitted). Finally, a "'court may appropriately dispose of a case under 12(b)(1) on mootness grounds." *Mykonos v. United States*, 59 F. Supp. 3d 100, 103–04 (D.D.C. 2014) (citing *Comm. in Solidarity with the People of El Sal. v. Sessions*, 929 F.2d 742, 744 (D.C. Cir. 1991)).

**B.** **Rule 12(b)(6)**

Rule 12(b)(6) permits a party to move for dismissal on the grounds that the complaint has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Rollins v. Wackenhunt Servs., Inc.,* 703 F.3d 122, 129–130 (D.C. Cir. 2012).

5

## III. ANALYSIS

Defendants argue that Plaintiffs' claims should be dismissed because the claims are nonjusticiable and Plaintiffs have failed to state a claim upon which relief can be granted. Defendants argue that Plaintiffs' claims are moot because (1) the September 30, 2017 statutory deadline for issuing diversity visas for FY 2017 has passed, and (2) section 2(c) of the Executive Order has expired on its own terms. These two events, Defendants argue, preclude this court from ordering the State Department to process Plaintiffs' visas, and therefore Plaintiffs' "alleged injuries are no longer redressable." Mot. at 2. Because "[f]ederal courts lack jurisdiction to decide moot cases," *Larsen v. United States Navy*, 525 F.3d 1, 4 (D.C. Cir. 2008) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)), the court's threshold—and in this case, ultimately dispositive—question is whether this case is moot.

### A. Mootness

Article III of the Constitution confers jurisdiction to federal courts to adjudicate "Cases" or "Controversies." U.S. Const. art. III, § 2. This case or controversy requirement extends only to "actual, ongoing controversies," *Honig v. Doe*, 484 U.S. 305, 317 (1988), and precludes courts from deciding moot cases, *Larsen*, 525 F.3d at 4. A case is "'moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Munsell v. Dep't of Agriculture*, 509 F.3d 572, 581 (D.C. Cir. 2007) (quoting *Cnty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). In a case where "events outrun the controversy such that the court can grant no meaningful relief, the case must be dismissed as moot." *McBryde v. Comm. to Review*, 264 F.3d 52, 55 (D.C. Cir. 2001) (citing *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992)).

i. <u>Mootness Based on the September 30, 2017 Statutory Deadline</u>

Defendants first argue that Plaintiffs' claims are moot because the statutory deadline for issuing diversity visas for FY 2017 has passed, and therefore this court cannot provide Plaintiffs the relief they seek: the processing of their diversity visa applications. Mot. at 8–14. In support of this argument, Defendants cite to section 1154 of the Immigration and Nationality Act, which states that "[a]liens who qualify, through random selection, for a visa under section 1153(c) . . . shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II). Defendants argue that this statutory provision prohibits them from "issu[ing] diversity visas after midnight on September 30," and therefore "there is no 'likelihood' that Plaintiffs' alleged injury can be 'redressed by a favorable decision.'" Mot. at 10 (quoting *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014)).

The court considered and rejected this argument in its September 29, 2017 decision on Plaintiffs' motion for a preliminary injunction. Mem. Op. at 14–15. The court, persuaded by the courts' reasoning in *Paunescu v. Immigration & Naturalization Serv.*, 76 F. Supp. 2d 896 (N.D. Ill. 1999), and *Przhebelskaya v. United States Bureau of Citizenship & Immigration Servs.*, 338 F. Supp. 2d 399 (E.D.N.Y. 2004), found that it had the equitable power to order the State Department to process visas after the statutory deadline. Mem. Op. at 14 ("Specifically, as shown in *Przhebelskaya* and *Paunescu*, the court may order the State Department to process visas past the statutory deadline where Plaintiffs have sought relief prior to the end of the fiscal year, as Plaintiffs have here."). Invoking its equitable power, the court ordered the State Department to hold unused visa numbers for FY 2017 "to process Plaintiffs' visa applications in the event the Supreme Court finds the Executive Order to be unlawful." Order, Sept. 29, 2017.

7

Nonetheless, Defendants maintain that the September 30 statutory deadline bars relief, and support this contention with arguments similar to those rejected in the court's previous decision.[1] Mot. at 8–12. In light of the court's reliance on *Paunescu* and *Przhebelskaya*, Defendants argue for the first time that this court misinterpreted the import of these two cases, and therefore its reliance on these cases was incorrect. Mot. at 14. The significance of these two cases, Defendants argue, "is not that equity overcomes statutory limitations on relief, but rather that courts have inherent power to enforce their prior orders." *Id.*

Assuming, for the sake of argument, that Defendants are correct, and *Paunescu* and *Przhebelskaya* merely confirm the inherent power of courts to enforce their prior orders, the court could rely on this power to grant Plaintiffs' requested relief. If the court were to now order the State Department to use the unused visa numbers to process Plaintiffs' visa applications, it would be requiring the State Department to fulfill its obligations under a prior order—the September 29 Order. Under that Order, the State Department was required to not merely reserve the unused visa numbers, but to do so for a specific purpose: the future processing of Plaintiffs' visa applications. As in *Paunescu* and *Przhebelskaya*, the court issued an order directing the State Department to act prior to the September 30 deadline, and if it were to require the State

---

[1] Defendants expound on their argument that the court lacks authority to override the September 30 deadline on visa issuance, noting that "[p]rinciples of equity do not override" section 1154's statutory deadline. Mot. at 10. Defendants' reliance on this general proposition is contradicted by their failure to specifically argue that the courts in *Paunescu* and *Przhebelskaya* improperly ordered the adjudication of visa applications after the statutory deadline. Instead, Defendants merely "take issue with the holdings in those cases," ECF No. 56 (Reply) at 3, suggest that "aspects" of the two cases may have been wrongly decided, Reply at 7 n.4, and argue that a court can override the statutory deadline only when a court orders the adjudication of visas prior to the deadline. Mot. at 14. In the court's view, in so arguing, Defendants concede that under certain circumstances, equity permits a court to order the processing of visas after September 30.

Department's full compliance with its prior order, it would be within its "inherent power to enforce prior orders" to do so.

Defendants argue that the prior orders in *Paunescu* and *Przhebelskaya* directed the State Department to *process* visas, whereas this court's order directed the State Department to reserve visa numbers for *future processing*. Mot. at 12, 14. This difference is immaterial for two reasons. First, the *Paunescu* and *Przhebelskaya* courts did not limit their holdings to situations in which a court's prior order specifically compels the *immediate* processing of visa applications.

Second, the difference in wording between this court's September 29 Order and the orders in *Paunescu* and *Przhebelskaya* is attributable, at least in part, to the unique posture of this case on September 29, 2017. On that date, this court was precluded from ordering the State Department to immediately process Plaintiffs' visa applications because the legality of the Executive Order—the ultimate source of Plaintiffs' injuries—was pending before the Supreme Court. *See* Mem. Op. at 8–11. As in *Paunescu* and *Przhebelskaya*, Plaintiffs sought relief before the September 30 deadline. But unlike in *Paunescu* and *Przhebelskaya*, this court was permitted to order—at most—only the possible future processing of Plaintiffs' visa applications. None of the cases on which Defendants rely suggest that the court is prohibited from ordering and later enforcing the future processing of diversity visas after the statutory deadline in such a situation. Indeed, some of the cases suggest the opposite is true. *See, e.g.*, *Coraggioso v. Ashcroft*, 355 F.3d 730, 734 n.8 (3d Cir. 2004), *as amended* (Jan. 29, 2004) ("Had Coraggioso sought relief prior to the expiration of the 1998 fiscal year, our analysis may have been different."); *Keli v. Rice*, 571 F. Supp. 2d 127, 135 (D.D.C. 2008) ("Both the Third and Seventh Circuits have hinted that the entry of injunctive relief prior to the end of the applicable fiscal year may preserve a case's justiciability.") (citing *Coraggioso*, 355 F.3d at 734 n.8; *Ahmed v. Dep't of*

9

*Homeland Sec.*, 328 F.3d 383, 387 (7th Cir. 2003); *Iddir v. Immigration & Naturalization Serv.*, 301 F.3d 492, 501 n.2 (7th Cir. 2002)).

Accordingly, whether a district court orders the immediate or future processing of diversity visas—as long as plaintiffs seek relief and the court issues an order granting relief prior to the September 30 deadline—the court is entitled to enforce its prior order. Therefore, if the court deemed it appropriate, it could order the State Department to process Plaintiffs' diversity visa applications, and the passing of the September 30 deadline did not moot Plaintiffs' claims.

### ii. Mootness Based on the Expiration of Section 2(c) of the Executive Order

Defendants next argue that because section 2(c) of the Executive Order expired on its own terms, the case no longer presents a "live case or controversy." Mot. at 15–17. In support of this argument, Defendants cite to the Supreme Court's orders mooting the challenges to the Executive Order in *IRAP* and *Hawaii*. In its order in *IRAP*, the Court explained:

> We granted certiorari in this case to resolve a challenge to 'the temporary suspension of entry of aliens abroad under Section 2(c) of Executive Order No. 13,780.' Because that provision of the Order 'expired by its own terms' on September 24, 2017, the appeal no longer presents a 'live case or controversy.' *Burke v. Barnes,* 479 U.S. 361, 363 (1987).

*IRAP*, 138 S. Ct. at 353; *Hawaii*, 138 S. Ct. at 377 (similar). The Court vacated the lower courts' decisions, remanded the cases with instructions to dismiss the challenges to the Executive Order as moot, and "express[ed] no view on the merits" of those challenges. *Id.* Defendants argue that in light of the Supreme Court's actions, the court should dismiss this case as moot.

Plaintiffs respond that the expiration of the Executive Order does not moot their claims because their Amended Complaint challenges the State Department's policy of refusing to process their visa applications, not the Executive Order itself. ECF No. 54 (Opp.) at 19. Plaintiffs further argue that "even though [the Executive Order] has expired, Defendants'

justification for their actions, based on [the Executive Order] persists," and therefore their "claims cannot possibly be moot." *Id.* Lastly, Plaintiffs argue that the Supreme Court's decision to express no view on the challenges to the Executive Order does not moot this case, but instead "clears the way for this litigation to proceed." *Id.* at 17. The court finds all three arguments unpersuasive.

Although Plaintiffs do not challenge the Executive Order directly, their claims challenge a State Department policy that was promulgated pursuant to the Executive Order. If, as the Supreme Court has found, section 2(c)'s expiration moots challenges to the Executive Order, it necessarily follows that challenges to a State Department's policy promulgated pursuant to that section of the Executive Order are moot as well. Defendants' continuing assertion that the State Department's policy was a lawful implementation of the Executive Order does not save Plaintiffs' claims. It is likely that the defendants in *Hawaii* and *IRAP* also maintain that the Executive Order was a lawful exercise of the President's power. Even so, the Supreme Court concluded that it was appropriate to dismiss those cases as moot, and thus this court must do the same here.

Plaintiffs' argument that the Supreme Court's decision to express no view on the legality of the Executive Order "clears the way for this litigation to proceed" does not convince this court otherwise. This court's September 29, 2017 Order was unambiguous; it expressly predicated a future order requiring the State Department to process Plaintiffs' visa applications on "the Supreme Court find[ing] the Executive Order to be unlawful." Order, Sept. 29, 2017. The Supreme Court declined to do so. *IRAP*, 138 S. Ct. at 353; *Hawaii*, 138 S. Ct. at 377. Accordingly, a condition precedent to the court granting Plaintiffs the ultimate relief they seek—the processing of their visa applications—was not satisfied. Given the Supreme Court's decision

to moot the challenges to the Executive Order and its decision not to rule on the legality of the Executive Order, events have "outrun the controversy," and there is no longer any meaningful relief this court can provide. Therefore, it must dismiss this case as moot. *See McBryde*, 264 F.3d at 55 (citation omitted).[2]

B. **Defendants' Additional Arguments for Dismissal**

Having concluded that Plaintiffs' claims are moot, the court need not reach Defendants' additional arguments, especially those relating to the merits of Plaintiffs' claims.[3] *See Larsen*, 525 F.3d at 4 ("'Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies.'") (quoting *Iron Arrow Honor Soc'y*, 464 U.S. at 70).

IV. CONCLUSION

The court acknowledges the enormous statistical odds Plaintiffs faced and overcame in being chosen to interview and apply for a diversity visa in FY 2017. Millions of individuals enter the diversity visa lottery every year, hoping to have the chance to enter the United States.

---

[2] The court's decision is further supported by Plaintiffs' inability to demonstrate a bona fide relationship with the United States. Am. Compl. ¶ 45 ("The proposed class is defined . . . as all persons who . . . are subject to the Executive Order and do not qualify for the 'bona fide relationship' exception."). Following the Supreme Court's June 26, 2017 decision, courts considering challenges to Executive Orders on travel have limited their injunctions to individuals with bona fide relationships with the United States, thereby permitting the government to enforce the executive actions as to individuals with no such relationships. *See Hawaii v. Trump*, 878 F.3d 662, 701–03 (9th Cir. 2017) (narrowing the scope of an injunction to "give relief only to those with a credible bona fide relationship with the United States, pursuant to the Supreme Court's decision in *IRAP*"); *see also IRAP v. Trump*, 883 F.3d 233, 273–74 (4th Cir. 2018), *as amended* (Feb. 28, 2018); *Doe v. Trump*, No. 17-0178, 2017 WL 6551491, at *26 (W.D. Wash. Dec. 23, 2017). Plaintiffs have not articulated why this court should depart from this application of the Supreme Court's June 26 decision and order the processing of visa applications for individuals without the requisite relationships with the United States.

[3] The court notes that it has already rejected Defendants' argument that the doctrine of consular non-reviewability renders this case nonjusticiable in its opinion on Plaintiffs' motion for a preliminary injunction. Mem. Op. 15–17.

The fact that Plaintiffs—merely by virtue of their citizenship—are unable to take full advantage of this rare opportunity is unfortunate. Nevertheless, even the most unfortunate of circumstances do not permit this court to rule on the merits of claims for which there is no longer a meaningful remedy available. For the foregoing reasons, Defendants' motion to dismiss will be GRANTED.

A corresponding order will issue separately.

Date: March 27, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge