# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

—————————————————————

HAMED SUFYAN OTHMAN
ALMAQRAMI, *et al.*,

   *Plaintiffs/Petitioners*,

  *v.*

MICHAEL R. POMPEO, in his official
capacity as Secretary of State, *et al.*,

   *Defendants/Respondents.*

—————————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 1:17-cv-01533-TSC

## DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS

ETHAN P. DAVIS
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

SAMUEL P. GO
Assistant Director

JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section

*Attorneys for Defendants/Respondents*

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

ARGUMENT ................................................................................................................................3

    I.    This Plaintiffs Were Not Eligible For A Diversity Visa In September 2017 .......3

        A.  *Plaintiffs' Interpretation of Issuing Diversity-Visas Under the INA, the Executive Order, and Proclamation Is Wrong* ............................................................................................3

        B.  *Plaintiffs' Interpretation Is in Tension With Both History and the Court's Decision in* Hawaii....8

    II.    Defendants Do Not Have The Statutory Power To Issue FY 2017 Diversity Visas .............................................................................................................................10

    III.    *Hawaii* Confirms That Consular Officers' Visa-Adjudications Are Not Reviewable ............................................................................................................13

CONCLUSION ............................................................................................................................14

## TABLE OF AUTHORITIES

### CASES

*Ahmed v. DHS*,
   328 F.3d 383 (7th Cir. 2003)..................................................................................... 10, 11

*Alharbi v. Miller*,
   368 F. Supp. 3d 527 (E.D.N.Y. 2019) ...........................................................................13

*Allen v. Milas*,
   896 F.3d 1094 (9th Cir. 2018)........................................................................................13

*Amiri v. DHS*, — F. App'x —,
   2020 WL 3618888 (6th Cir. July 2, 2020) ............................................................. 12, 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).........................................................................................................4

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000).........................................................................................................6

*Fiallo v. Bell*,
   430 U.S. 787 (1977).......................................................................................................12

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995)..................................................................................................... 6, 7

*Iddir v. INS*,
   301 F.3d 492 (7th Cir. 2002).........................................................................................11

*INS v. Cardoza-Fonseca*,
   480 U.S. 421 (1987).........................................................................................................8

*Int'l Refugee Assistance Project v. Trump*,
   961 F.3d 635 (4th Cir. 2020)................................................................................... 12, 13

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972).......................................................................................................12

*Koons Buick Pontiac GMC, Inc. v. Nigh*,
   543 U.S. 50 (2004)...................................................................................................... 7, 8

*Landmark Legal Found. v. IRS*,
   267 F.3d 1132 (D.C. Cir. 2001) ................................................................6

*Make the Road N.Y. v. Wolf*, — F.3d —
   2020 WL 3421904 (D.C. Cir. June 23, 2020) .........................................3

*Mandel Bros., Inc.*,
   359 U.S. 385 (1959) ..................................................................................6

*Matushkina v. Nielsen*,
   877 F.3d 289 (7th Cir. 2017) ..................................................................12

*Miller v. Clinton*,
   687 F.3d 1332 (D.C. Cir. 2012) ................................................................6

*Nademi v. INS*,
   679 F.2d 811 (10th Cir. 1982) ..................................................................9

*Paunescu v. INS*,
   76 F. Supp. 2d 896 (N.D. Ill. 1999) ........................................................10

*Przhebelskaya v. U.S. Bureau of Citizenship & Immigration Services*,
   338 F. Supp. 2d 399 (E.D.N.Y. 2004) .....................................................10

*Saavedra Bruno v. Albright*,
   197 F.3d 1153 (D.C. Cir. 1999) ..............................................................14

*Skidmore v. Swift & Co.*,
   323 U.S. 134 (1944) ..................................................................................6

*Trump v. Hawaii.*,
   138 S. Ct. 2392 (2018) .....................................................................*passim*

*Trump v. Int'l Refugee Assistance Project*,
   138 S. Ct. 353 (2017) ................................................................................3

## STATUTES

5 U.S.C. § 706(1) ...........................................................................................4

5 U.S.C. § 706(2) ...........................................................................................4

5 U.S.C. § 706(2)(A)......................................................................................4

8 U.S.C. § 1152(a)(1)(A) ...............................................................................9

8 U.S.C. § 1153(c) .................................................................................................................. 2

8 U.S.C. § 1154 ................................................................................................................. 1, 10

8 U.S.C. § 1154(c) .................................................................................................................. 1

8 U.S.C. § 1182 ....................................................................................................................... 2

8 U.S.C. § 1182(a) .................................................................................................................. 7

8 U.S.C. § 1182(f) ................................................................................................................... 4

8 U.S.C. § 1201(c) .................................................................................................................. 6

8 U.S.C. § 1201(g) ......................................................................................................... *passim*

8 U.S.C. § 1201(h) .................................................................................................................. 6

8 U.S.C. § 1202(b) .................................................................................................................. 6

15 U.S.C. § 1637a(a)(6)(C) .................................................................................................... 8

## REGULATIONS

22 C.F.R. § 42.33(a)(1) ...................................................................................................... 1, 2

42 C.F.R. § 42.81(a) ............................................................................................................... 6

## OTHER AUTHORITIES

82 Fed. Reg. 45 ...................................................................................................................... 6

## INTRODUCTION

The Plaintiffs in this case are diversity-visa lottery selectees from fiscal year ("FY") 2017 whose Amended Complaint ostensibly challenges a State Department cable from June 2017 applying Executive Order No. 13,780. *See* Plaintiffs' Opposition to Defendants' Renewed Motion to Dismiss (ECF No. 83) ("Pls.' Opp'n") at 1. Knowing that a challenge under the Administrative Procedure Act ("APA") against an executive order or proclamation would be fruitless, the Plaintiffs instead mischaracterize the cable as a "policy" to be challenged under mandamus principles. *See id.* But even this June 2017 cable could not have affected them at the time of this Court's Order on September 29, 2017, *see* ECF No. 50, as the Plaintiffs have previously acknowledged that the executive order it construed expired when Presidential Proclamation 9645 was issued on September 24, 2017, *see* ECF No. 48 at 1. Three other mistakes undermine the Plaintiffs' Amended Complaint.

First, Plaintiffs mistake this Court's Order for Defendants to "hold … visa numbers" as meaning the same thing as holding actual diversity visas for FY 2017 after that fiscal year had already ended. ECF No. 50. In this respect, neither Plaintiffs' APA nor Mandamus Act claims are cognizable under the doctrine of consular nonreviewability because the relief Plaintiffs are seeking is for this Court to either issue visas itself or to order the State Department to do so—directly undermining the doctrine. This is why the case law distinguishing this doctrine for visa applications that are still pending does not apply where, as here, visa applications that were adjudicated and were refused.

Second, even when viewed as a merits question, the Plaintiffs are still ineligible for a FY 2017 diversity visa under the plain language of 8 U.S.C. § 1154(c) ("Section 1154") and 22 C.F.R. § 42.33(a)(1)—which forbid the issuance of diversity visas after the end of each relevant fiscal year. This is because 8 U.S.C. § 1154 is clear: "Aliens who qualify, through random selection, for a [diversity] visa … *shall remain eligible to receive such visa only through the end of the specific fiscal year for which*

*they were selected*." 8 U.S.C. § 1154(a)(1)(I)(ii)(II) (emphasis added). The United States Department of State's ("State Department") regulations are equally clear: "The eligibility for a visa under INA 203(c) [8 U.S.C. § 1153(c)] ceases at the end of the fiscal year in question. *Under no circumstances* may a consular officer issue a visa or other documentation to an alien after the end of the fiscal year during which an alien possesses diversity visa eligibility." 22 C.F.R. § 42.33(a)(1). The Plaintiffs now wish to pretend that they are statutorily entitled to a "pass" from this language because of the contingent, partial injunctive relief they received from this Court—even where the conditions ordered by this Court on September 29, 2017 were not met.

Finally, and more relevant to the second condition laid out by this Court's Order of September 29, 2017, the Plaintiffs' theory that Defendants were required to issue them diversity visas in spite of the Proclamation's visa restrictions is not viable after *Trump v. Hawaii*. 138 S. Ct. 2392 (2018). The Supreme Court held in that case that foreign nationals who are "inadmissible under [8 U.S.C. § 1182 … [are] screened out as 'ineligible to receive a visa.'" *Id.* Thus, under the Executive Order and the Proclamation, the Plaintiffs here were inadmissible and, in turn, "ineligible to receive a visa." This is true irrespective of Section 1152(a)(1)(A)—which limits the Secretary of State in certain respects, but does not limit the Secretary from declining to issue visas to those who are inadmissible pursuant to a Presidential order under Section 1182(f). Plaintiffs' Opposition's attempt to backtrack from their prior argument to this Court that the Proclamation's distinctions with the challenged Executive Order "are immaterial for the purposes of this litigation" should be rejected. (ECF No. 48) at 1. Defendants therefore ask the Court to grant their renewed motion to dismiss. (ECF No. 81).

**ARGUMENT**

I.     **The Plaintiffs Were Not Eligible For A Diversity Visa In September 2017.**

      *A.   Plaintiffs' Interpretation of Issuing Diversity-Visas Under the INA, the Executive Order, and Proclamation Is Wrong*

Rather than first addressing Defendants' motion's threshold arguments, Plaintiffs' Opposition prefers to stick to the fiction that the Executive Order and the State Department's June 2017 cable may still be challenged in July 2020—years after the Executive Order they are actually challenging expired. *See Trump v. Int'l Refugee Assistance Project*, 138 S. Ct. 353 (2017) (mem.) ("*IRAP II*"). Specifically, Plaintiffs' Opposition argues that the State Department did not comply with the Immigration and Nationality Act ("INA") and its regulations by applying either the Executive Order, any cables (or "policy" as they conclusorily label such communications) interpreting that order, or the Proclamation to the Plaintiffs' diversity-visa applications in late September 2017. *See* Pls.' Opp'n 13–15. But in this respect the Amended Complaint fails to state a claim after *Hawaii*.

As an initial matter, it is important to remember that being selected in the diversity-visa lottery does not mean that the selectee will be able to apply for a visa or that a consular officer must adjudicate *all* diversity-visa applications by each September 30—only that they *stop* adjudicating visa applications on that date. This is why there were almost 34,000 lottery "winners" in FY 2017 who, for various reasons, were not found eligible for a diversity visa before the end of the fiscal year, including some "winners" who could not even apply for a diversity visa as a result of country limits already being reached under 8 U.S.C. § 1153(c)(1)(E)(v). How the Executive Branch (here, the State Department) structures that process given changing country conditions or security concerns as mandated by executive orders or presidential proclamations is itself discretionary. *See Hawaii*, 138 S. Ct. at 2408 ("By its plain language, [8 U.S.C.] § 1182(f) grants the President broad discretion to suspend the entry of aliens into the United States."); *cf. also Make the Road N.Y. v. Wolf*, — F.3d —, 2020 WL 3421904, at *14 (D.C. Cir. June 23, 2020) ("At bottom, while the [plaintiffs] want the court

- 3 -

to substantively superintend the Secretary's designation judgment even when the Secretary stays within statutory bounds, the search for governing standards comes up empty. That judgment is committed to agency discretion by law[.]"). Plaintiffs thus present no legitimate argument that Defendants had a clear, nondiscretionary duty to readjudicate their visa applications (that is, revisit the consular officer's past refusals) before their statutory eligibility expired with the close of FY 2017.

Plaintiffs respond that their claim is brought not under § 706(1) but under 5 U.S.C. § 706(2)(A), which prohibits arbitrary and capricious agency action. Pls.' Opp'n 40–43. Even if Plaintiffs properly alleged a claim of arbitrary and capricious agency action under 5 U.S.C. § 706(2)(A), which they did not,[1] Defendants offered Plaintiffs the opportunity to overcome their prior visa refusals by demonstrating that they had a bona fide relationship with a qualifying U.S. entity and thus were not subject to the executive order under the controlling case law in 2017. Indeed, the former plaintiffs in this case (P.K., Furooz, and Sorkhab) were able to make that showing to Defendants, established their eligibility to receive a diversity visa, and were issued such visas days before this Court's Order of September 29, 2017. The other Plaintiffs' cases remained refused under 8 U.S.C. § 1201(g). Consequently, Plaintiffs' APA claim is one of unlawful withholding under 5 U.S.C. § 706(1) if it is anything.

Regardless, even if Plaintiffs properly invoked Section 706(2)(A), their Amended Complaint still fails to identify anything arbitrary or capricious by Defendants after *Hawaii*. The Amended Complaint claims that Defendants violated the APA by impermissibly using 8 U.S.C. § 1182(f) to refuse Plaintiffs a visa and places great weight on the distinction between entry and the issuance of a

---

[1]     Plaintiffs claim that they did bring an action under 5 U.S.C. § 706(2) because they specifically cited that subsection in their Amended Complaint and because they alleged that the action was "final agency action." Pls.' Br. at 40–43. That contention is, like all legal conclusions, not entitled to any deference on a Rule 12(b)(6) motion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

visa. *See* Pls.' Opp'n 14–20. Here again, a visa is a travel document: it is issued by a State Department consular officer, and it allows an alien to "obtain transportation to the United States" and apply for admission at a port of entry. 1 Charles Gordon *et al.*, *Immigration Law and Procedure* § 8.04[1] (2019). A visa, however, may not be issued if the applicant "is ineligible to receive a visa … under [S]ection 1182 of this title, or any other provision of law."   8 U.S.C. § 1201(g).[2] The Defendants are thus statutorily barred from issuing visas to the Plaintiffs here—whose preferred interpretation of statute would have Section 1182 only refer back to Section 1182(a). *See* Pls.' Opp'n 15–20.

Again, however, Plaintiffs' preference for only one subsection of Section 1182 ignores how that subsection lists many such grounds of ineligibility, including health, criminal history, terrorist affiliation, potentially serious adverse foreign-policy consequences—and a presidential determination under Section 1182(f) that the foreign national's entry would be detrimental to the interests of the United States. *See Hawaii*, 138 S. Ct. at 2407. Although Section 1182(f) does not explicitly equate ineligibility for admission with ineligibility for a visa, that is the most natural reading of Sections 1201(g) and 1182(f) together. The State Department's practice therefore, consistent with Section 1201(g), has been to treat foreign nationals covered by presidential orders under Section 1182(f) as ineligible for visas. *See* U.S. Dep't of State, 9 *Foreign Affairs Manual* ("FAM") 302.14-3(B). That approach makes practical sense, as there would be little reason to issue a visa to someone who is barred from entering the country, only for the alien to travel to this Nation and be denied entry

---

[2]    More fully, this subsection states:
> No visa or other documentation shall be issued to an alien if (1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law, (2) the application fails to comply with the provisions of this chapter, or the regulations issued thereunder, or (3) the consular officer knows or has reason to believe that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or any other provision of law[.]

8 U.S.C. § 1201(g).

upon arrival at the border.  The Court should defer to that reasonable interpretation of the law. *See, e.g., Miller v. Clinton*, 687 F.3d 1332, 1342 n.11 (D.C. Cir. 2012) ("[G]iv[ing] the [State] Department's views 'the weight derived from their "power to persuade"'" (quoting *Landmark Legal Found. v. IRS*, 267 F.3d 1132, 1136 (D.C. Cir. 2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), respectively).

Plaintiffs insist that there *is* a reason to issue a visa to a foreign national who must be refused entry under Section 1182(f). Pls.' Opp'n 13. But even though a visa entitles foreign nationals to travel to the United States, they still may not enter if are "found to be inadmissible." 8 U.S.C. § 1201(h). Plaintiffs persist in noting that there is a distinction between entry and a visa, but the INA and whom the Executive determines to have met their burden of establishing admissibility into the United States is meant to be read together to make sense. *See FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) ("[C]ourt[s] must ... interpret … statute[s] 'as a symmetrical and coherent regulatory scheme,' and fit, 'if possible, all parts into an harmonious whole[.]'" (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995) and *FTC v. Mandel Bros., Inc.*, 359 U.S. 385, 389 (1959), respectively)).[3] Applying the Executive Order—or the Proclamation—to mandate issuance of visas but deny entry into the United States in September 2017 would only result in administrative confusion, in spite of Plaintiffs' assurances that they would (and still will) forgo travel until the Proclamation is lifted. *See* 82 Fed. Reg. 45,161; *cf. also* 8 U.S.C. § 1201(c) (limiting immigrant visas to a six-month validity period). In short, Defendants properly refused the visa applications here under Section 1201(g) and 42 C.F.R. § 42.81(a) because the Plaintiffs were—and still are—ineligible for admission under Sections 1182(f) and ineligible for a visa per Section 1201(g).

---

[3]   Admission and visa issuance *are* distinct subject matters. A statute that addresses visas does not necessarily address entry, *e.g.*, 8 U.S.C. § 1202(b) (documentation required to be presented for a visa), and vice versa, *e.g.*, *id.* § 1225(b)(1) (permitting certain applicants for admission to apply for asylum). Here, however, the issues are related and materially identical by virtue of Section 1201(g).

Instead of arguing why Section 1201(g) would not apply, Plaintiffs focus on Section 1182(a). Pls.' Opp'n 16–23. Section 1182(a) ties visa eligibility to admissibility: "Except as otherwise provided in this chapter, *aliens who are inadmissible under the following paragraphs are ineligible to receive visas* and ineligible to be admitted to the United States[.]" 8 U.S.C. § 1182(a) (emphasis added). Plaintiffs again argue that Section 1182(f) only discusses entry. Pls.' Opp'n 17–20. In making this argument, Plaintiffs dispute that Section 1182(f) is a "following paragraph[]" of Section 1182(a). They argue that "paragraph" is a legal term of art that refers only to numbered statutory subdivisions. Pls.' Opp'n 17–18. Under their reasoning, "following paragraphs" refers to Section 1182(a)(1), Section 1182(a)(2), and so forth, but not Section 1182(f). This argument is meritless.

To begin, Plaintiffs ignore Section 1201(g)'s reference to *all* of Section 1182.  But the argument fails even looking solely at Section 1182(a). In the context of this case, the "following paragraph[]" language would encompass Section 1182(f). "Following" means "being next in order or time," and "listed or shown next*." Merriam-Webster's Collegiate Dictionary* 486 (11th ed. 2014). "Paragraph" refers to "a subdivision of a written composition that consists of one or more sentences." *Id.* at 898. Neither word appears to have a precise, specialized meaning in the INA. Therefore, Section 1182(f), a statutory subdivision that is shown after Section 1182(a), is a "following paragraph[]" that provides a ground for refusing a visa. Additionally, this reading is consistent with Section 1201(g), which refers to all of Section 1182, and reading the provisions to be consistent makes far more sense than Plaintiffs' cramped reading.

*Koons Buick*, relied upon by Plaintiffs, Pls.' Opp'n 17, did not hold that the term "paragraph" will always, as a matter of law, refer to statutory subdivisions identified by Arabic numbers. *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60–64 (2004). Rather, it resorted to this approach as part of a multifaceted, "holistic" analysis of an unclear statute that included a detailed study of legislative history. *Id.*; *see also id.* at 66–67 (Kennedy, J., concurring) (noting that the majority opinion avoided

the question of whether the term "subparagraph," on its own, could resolve the case, because it was ambiguous). And as *Koons Buick* even noted, Congress has passed statutes that do *not* apparently adhere to this scheme, like 15 U.S.C. § 1637a(a)(6)(C), *see* 543 U.S. at 61 n.5. This Court should apply Section 1182's provisions in light of the INA's Section 1201(g), and to avoid the unusual anomaly that would result under Plaintiffs' theory, whereby visas must be issued to individuals who may not lawfully be admitted into the United States.

Consequently, the Plaintiffs' argument about the "divergent" structures between Sections 1182(a) and (f) ignores the plain language of Section 1182(a), which ties admissibility (addressed in the paragraphs following Section 1182(a)) together with visa eligibility (addressed in Section 1201(g)). Pls.' Opp'n 18. The Plaintiffs here are essentially making a legislative intent argument, but the best expression of legislative intent is the language of the statutes that Congress passed. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 431–32 (1987) (applying the assumption "that the legislative purpose is expressed by the ordinary meaning of the words used"). The text of these statutes is stark: Section 1182(a) is clear that a foreign national who is not permitted to be admitted under a "following paragraph[],"is not eligible to receive a visa. Applied here, when the President suspended the admission of aliens under Section 1182(f), that rendered Plaintiffs inadmissible under Section 1182(a), and so Defendants were required to deny Plaintiffs' visas. There was nothing arbitrary under the APA or unlawful under the INA about those refusals.

    B.   *Plaintiffs' Interpretation Is in Tension With Both History and the Court's Decision in* Hawaii

Rather than helping the Plaintiffs by acknowledging the admitted distinction between admission and visa issuance, *see* Pls.' Opp'n 18–20, the Court's decision in *Hawaii* explains how it makes no sense to read the INA to mandate visa issuance to foreign nationals who are ineligible to enter the United States, *see* 138 S. Ct. at 2413–16. In fact, the Court specifically noted and followed the joint reading of the INA outlined above when it noted that "Section 1182 defines the pool of

- 8 -

individuals who are admissible to the United States," which "come[s] into play …. [When] any alien who is inadmissible under § 1182 (based on, for example, health risks, criminal history, or foreign policy consequences) is screened out … [under] 8 U.S.C. § 1201(g)." *Id.* at 2414. The Court's reference to "any alien inadmissible under § 1182," and then listing grounds for inadmissibility that tracked Section 1182(f) operate directly as Defendants have maintained since this case was filed three years ago. *Id.*

Plaintiffs then argue that the Executive Order actually compelled the State Department to issue visas because it was mainly concerned with preventing entry into the United States. Pls.' Opp'n 20–22. Plaintiffs specifically discuss President Carter's decision to deny and revoke visas to Iranian nationals, *see id.* at 21–22, but again ignore how there, much like here on September 29, 2017 with the Proclamation, President Carter ordered the Secretary of State and the Attorney General to limit "entry" of Iranian nationals and expected this would accomplish not just the denial of entry but visa issuance, as well. *See* Exec. Order No. 12,172, 44 Fed. Reg. 67,947 (1979) (Iranians holding nonimmigrant visas), amended by Exec. Order 12,206, 45 Fed. Reg. 24,101 (1980) (expanding directive to encompass all Iranian nationals); *see also Nademi v. INS*, 679 F.2d 811, 814 (10th Cir. 1982).

Plaintiffs also contend that Defendants' refusal of Plaintiffs' visas constituted nationality discrimination in violation of 8 U.S.C. § 1152(a)(1)(A). Plaintiffs' briefing on this point is cursory, *see* Pls.' Opp'n 23–24, likely because it is in stark contrast to what the Supreme Court actually decided in *Hawaii*. As Defendants have previously explained throughout this litigation, there is no conflict between the INA and the application of either the Executive Order or Proclamation to the diversity-visa scheme in FY 2017. Plaintiffs again point to the distinction between admission and visa issuance, Pls.' Opp'n 24, but for the reasons already described above, ignore how the INA was read by the Hawaii Court to provide a set of rules intended to be read together. *See Hawaii*, 138 S. Ct. at

2413–16. While the principle against nationality discrimination operates within the class of persons who are eligible to receive a visa, it does not limit other provisions of the INA, such as Section 1182(f), which determine who is eligible to receive visas in the first place. *Id.* at 2414 ("Once § 1182 sets the boundaries of admissibility into the United States, § 1152(a)(1)(A) prohibits discrimination in the allocation of immigrant visas based on nationality and other traits."). And again, to hold that Section 1152(a) disallows for nationality based distinctions would make little sense in a case involving the diversity visa program—which explicitly conditions eligibility for the program in part based on nationality. *See id.* § 1152(c).

## II.    Defendants Do Not Have The Statutory Power To Issue FY 2017 Diversity Visas.

Although the Plaintiffs argue that they may still be found eligible and issued diversity visas for FY 2017 given this Court's September 29, 2017 Order, Pls.' Opp'n 25–33, their argument flies in the face of both the separation of powers and the plain text of the statutory language. Specifically, 8 U.S.C. § 1154 states that diversity-visa lottery selectees are only "eligible to receive such visa only through the end of the specific fiscal year for which they were selected." 8 U.S.C. § 1154(a)(1)(I)(ii)(II). Faced with this hurdle, Plaintiffs rely heavily upon *Paunescu v. INS*, 76 F. Supp. 2d 896 (N.D. Ill. 1999), and *Przhebelskaya v. U.S. Bureau of Citizenship & Immigration Services*, 338 F. Supp. 2d 399 (E.D.N.Y. 2004), for the proposition that this Court's September 29, 2017 Order provides them with a way around the statue. Pls.' Opp'n 29–33. Indeed, they point to language in the Seventh Circuit's decision in *Ahmed v. DHS*, 328 F.3d 383, 387 (7th Cir. 2003) and the D.C. Circuit's opinion in this case to suggest that district courts can order the State Department to issue diversity visas when preliminary relief—any type of preliminary relief—was granted prior to the end of a fiscal year. Pls.' Opp'n 28. This argument is fundamentally flawed for two distinct reasons.

First, none of the other cases relied upon by Plaintiffs actually dealt with visas being issued. They dealt with either the Immigration and Naturalization Service or the U.S. Citizenship and

Immigration Services allocating visa numbers to grant adjustment of status in the United States. This oversight by the Plaintiffs explains why they asked this Court to focus on visa numbers in September 2017 and, ironically, harkens back to the distinction that Plaintiffs are so insistent upon regarding visas being issued and admission into the United States. Pls.' Opp'n 32. Plaintiffs' argument around this points to how the Defendants are on U.S. soil, *see id.*, but Section 1154's language is crystal clear regardless of the location of the Defendants—the Plaintiffs are no longer "eligible to receive" a diversity visa (and not just a visa number) because FY 2017 came and went years ago, 8 U.S.C. § 1154(a)(1)(I)(ii)(II).

Second, Plaintiffs' argument on this point is largely irrelevant because this Court never issued an order requiring Defendants to re-adjudicate Plaintiffs' visa applications before the end of the fiscal year. Instead, Plaintiffs' visa applications had already been adjudicated and refused under 8 U.S.C. § 1201(g). To the extent that the status quo was frozen by this Court on September 29, 2017, that was only done in the event the Supreme Court invalidated the Executive Order (or, more fundamentally, rejected the authority and operation of that Order), an event which did not come to pass. If anything, the limited relief that Plaintiffs did receive by this Court's order was expressly predicated upon the Supreme Court's later decisionmaking—which went against all of the substantive arguments Plaintiffs have made in this case. *See supra* at 3–9.

Consequently, the 2017 fiscal year ended without an order from this Court akin to those issued in *Paunescu* or *Przhebelskaya*, both of which dealt with foreign nationals already within the United States who had not and did not apply for actual visas. Both the plain language of Section 1154 and the case law interpreting it demonstrate that Defendants may no longer issue diversity visas for fiscal year 2017. *See Iddir v. INS*, 301 F.3d 492, 500–01 (7th Cir. 2002) (describing how the relief sought by the plaintiffs was "illusory" because there, like here, the agency no longer had "the statutory authority to issue [diversity] visas"). The Plaintiffs have thus failed to plead a claim where

relief can be granted and their Amended Complaint should be dismissed with prejudice under Civil Rule 12(b)(6). *See Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 654 (4th Cir. 2020) ("*IRAP II*").

### III.  *Hawaii* Confirms That Consular Officers' Visa-Adjudications Are Not Reviewable.

Finally, the Plaintiffs contend that they can get around the doctrine of consular nonreviewability because they are challenging a "policy" in the form of the June 2017 cable rather than the actual visa refusals against the Plaintiffs. Pls.' Opp'n 33–39. But Plaintiffs' arguments around that doctrine are meritless after *Hawaii*. Faced with the same arguments made against the Proclamation, the Court could not have been any clearer: "A conventional application of [*Kleindienst v.* ]*Mandel*,[ 408 U.S. 753 (1972),] asking only *whether the policy* is facially legitimate and bona fide, would put an end to our review." *Hawaii*, 138 S. Ct. at 2420 (emphasis added); *see also id.* at 2420–21 ("It cannot be said that … *the policy* is 'inexplicable by anything but animus.'" (emphasis added)). This makes perfect sense because, as previously explained in this litigation, the doctrine of consular nonreviewability stems from Congress's "authority to set the terms upon which a person without status in the United States may procure a visa and enter the country, and its attendant prerogative to delegate the power to welcome, exclude, or expel individuals without lawful status to the executive branch." *Amiri v. DHS*, — F. App'x —, 2020 WL 3618888, at *3 (6th Cir. July 2, 2020) (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977). Courts have thus "recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Hawaii*, 138 S. Ct. at 2418 (quoting *Fiallo*, 430 U.S. at 792). There is thus no judicial review available to challenge visa-eligibility decisions made by consular officers abroad. *See Matushkina v. Nielsen*, 877 F.3d 289, 294 (7th Cir. 2017).

Plaintiffs attempt to make their case fit within the exception regarding visa applications that courts determined were pending and not finally adjudicated, Pls.' Opp'n 34–37, but the Plaintiffs'

visa applications *were* refused prior to the close of FY 2017 because they had not proven their eligibility or that they were admissible at that time, and there was *no* court order directing the processing of the visa *applications* prior to the close of FY 2017. *See* Defs.' Motion to Dismiss 33–34; *cf. also Alharbi v. Miller*, 368 F. Supp. 3d 527, 558 (E.D.N.Y. 2019) ("If plaintiffs were in fact approved for immigrant visas, the consular officer would have been required under the FAM to issue their visas on the day of their interviews, or the following day. Because they were not issued visas, the INA mandates that plaintiffs are necessarily inadmissible. There are no exceptions to these rules."). This brings Plaintiffs' case right back to what their Opposition makes plain, they are challenging the "policy" that was in effect when this Court issued its Order of September 29, 2017 preserving the status quo, Pls.' Opp'n 37, which was the Proclamation that was upheld under the doctrine in *Hawaii*, *see* 138 S. Ct. at 2420 (noting how, under the *Mandel* standard, the analysis of Proclamation 9645 would end once a court concluded that the Proclamation, on its face, provided reasons that were "facially legitimate and bona fide"); *see also IRAP II*, 961 F.3d at 648–50.

In short, and as the Sixth Circuit explained last week, "Courts to address the issue have reasoned that the APA does not provide an end-run around the consular non-reviewability doctrine." *Amiri*, 2020 WL 3618888, at *4. While Congress *could* authorize a cause of action for plaintiffs to challenge visa denials, courts may not create them using the APA. *See Allen v. Milas*, 896 F.3d 1094, 1108 (9th Cir. 2018). This result is in accord with *Hawaii*'s reiteration that the doctrine applies to the executive branch in the exercise of its discretion to conduct foreign policy around the world: "We limit[] our review to whether the Executive gave a 'facially legitimate and bona fide' reason for its action." 138 S. Ct. at 2419. The Plaintiffs' argument that the doctrine of consular non-reviewability does not apply where there was a cable they disagreed with is thus contradicted by *Mandel* and *Hawaii*; and the Plaintiffs do not offer a rationale for why the resolution of their case is not dictated by this precedent. And D.C. Circuit APA jurisprudence is in accord—the denial or

revocation of a visa for a foreign national abroad "is not subject to judicial review ... unless Congress says otherwise." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159–60 & n.9 (D.C. Cir. 1999). Consistent with *Saavedra Bruno* and the other Supreme Court and D.C. Circuit cases discussed in the motion to dismiss, Defendants respectfully ask the Court to rule consistent with binding and dismiss the Plaintiffs' Amended Complaint.

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court should grant their motion and dismiss this case.

Respectfully submitted,

ETHAN P. DAVIS
Acting Assistant Attorney General

WILLIAM C. PEACHEY
Director

SAMUEL P. GO
Assistant Director

By:  /s/ Joshua S. Press
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 305-0106
Fax: (202) 305-7000
e-Mail: joshua.press@usdoj.gov

Dated: July 8, 2020                    *Attorneys for Defendants*

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that on July 8, 2020, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will provide electronic notice and an electronic link to this document to all attorneys of record.

DATED:  July 8, 2020

By:  */s/ Joshua S. Press*
JOSHUA S. PRESS
Trial Attorney
United States Department of Justice
Civil Division

- 15 -