## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| HAMED SUFYAN OTHMAN ALMAQRAMI, *et al.,* on behalf of themselves and all others similarly situated, | ) ) ) ) | No. 1:17-cv-01533-TSC |
| | ) | |
| Plaintiffs/Petitioners, | ) | |
| v. | ) | |
| | ) | |
| ANTONY J. BLINKEN, *et al.*, | ) | |
| Defendants/Respondents. | ) | |

## JOINT MOTION FOR CLARIFICATION

The parties hereby file this Joint Motion for Clarification regarding the meaning of this Court's September 29, 2017, preliminary injunction order.

This case was brought by foreign nationals who were selected in the diversity visa lottery for fiscal year 2017.  Plaintiffs allege that their visa applications were not processed by the State Department, under a State Department policy set forth in a cable, suspending the processing of visas for individuals who were subject to the bar on entry of certain nationals from designated countries established by Exec. Order No. 13780 ("the Executive Order"), signed by former-President Trump on March 6, 2017.  The Plaintiffs alleged, *inter alia*, that the State Department's policy was unauthorized by statute or the Executive Order, and therefore violated the Administrative Procedure Act.

Title 8, United States Code, Section 1154(a)(1)(I)(ii)(II) provides that a selectee of the diversity visa lottery "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."  Thus, on August 3, 2017, Plaintiffs moved for a preliminary injunction, noting that their suit faced "an important deadline: their immigrant visas must be issued by the end of this fiscal year, that is, by September 30, 2017." ECF No. 2-1, at 1.

On September 29, 2017, the Court issued a memorandum opinion and order granting Plaintiffs' motion in part, and denying it in part.  ECF No. 49, 50.  The Court held it could not at that time order the Government to "process and issue visas" for Plaintiffs because the Supreme Court had stayed lower-court orders invalidating the Executive Order pending its review.  ECF No. 49, at 8, 11.  However, this Court granted Plaintiffs' alternative "request that the court order the State Department to reserve any unused FY 2017 visa numbers for processing after the Supreme Court issues a decision" on the Executive Order's legality.  *Id.* at 11.  The Court ordered Defendants "to: (1) report, by October 15, the number of visa numbers returned unused for fiscal year 2017; and (2) hold those visa numbers to process Plaintiffs' visa applications in the event the Supreme Court finds the Executive Order to be unlawful."  ECF No. 50; *see also* ECF No. 49, at 15.

On September 24, 2017, the Executive Order expired and was replaced by Presidential Proclamation 9645 ("Proclamation 9645"), and thus, the Supreme Court dismissed as moot challenges to the Executive Order referenced in this Court's order. *See Trump v. Hawaii*, 138 S. Ct. 377 (Oct. 24, 2017); *Trump v. IRAP*, 138 S. Ct. 353 (Oct. 10, 2017).  Defendants next moved to dismiss the present case, arguing, *inter alia*, it was also moot.  The Court granted Defendants' motion, stating that because challenges to the Executive Order were moot, "it necessarily follows that challenges to a State Department[] policy promulgated pursuant to that section of the Executive Order are moot as well."  ECF No. 65, at 11.

On appeal, the D.C. Circuit reversed, holding that this case was not moot because it was "not 'implausible' that the district court here could rely on equity to take steps to compel the issuance of diversity visas, notwithstanding the end of FY 2017."  *Almaqrami v. Pompeo*, 933 F.3d 774, 781 (D.C. Cir. 2019).  The court held: Plaintiffs "seek a court order instructing the government

2

to stop implementing the Guidance Memo, process their visa applications, and issue them diversity visas.  Neither their claim that such relief is legally available nor their claim that they are entitled to that relief is so implausible as to deprive the district court of jurisdiction.  And there is some chance that this relief will be effective at securing their immigration to the United States." *Id.* at 780.

Today, the challenged State Department cable is no longer in effect.  Thus, the key question is whether the Government can process Plaintiffs' visa applications and issue diversity visas to them, notwithstanding that fiscal year 2017 is over.  In that regard, the parties would be greatly aided by a clarification of the Court's September 29, 2017 order.

The Government has previously argued that this Court did not order the Defendants to adjudicate the Plaintiffs' diversity-visa applications prior to the expiration of fiscal year 2017; it ordered only the reservation of unused visa *numbers*, which are but one prerequisite for visa issuance.  Defendants maintain that visa numbers simply ensure that the congressionally-mandated limit on diversity visa issuances would not be exceeded, for example in the event the Supreme Court would have ruled against the Government.  Thus, in Defendants' view, the Court's injunction did not eliminate the obstacle presented by 8 U.S.C. § 1154(a)(1)(I)(ii)(II), which provides that individuals selected for the diversity visa program "shall remain eligible to receive such visa only through the end of the specific fiscal year for which they were selected."  The Government has also argued that the order on September 29, 2017, directed the Government to preserve visa numbers to ensure that not all diversity visa numbers would be used up before the end of the fiscal year, and to process Plaintiffs' visa applications *only* if the Supreme Court invalidated the Executive Order (the Court ordered the State Department to "hold (reserved) visa numbers to process Plaintiffs' visa applications in the event the Supreme Court finds the Executive

Order to be unlawful.").  ECF No. 50.  The Government believes this Court's injunction was framed this way so as to preclude the Government from arguing that the 2017 numerical cap on diversity visas had been reached (and that the Court lacks the authority to order issuing more FY-2017 DV visas than the Congressionally-mandated limit).

Subsequently, and because the Supreme Court did not invalidate the Executive Order (in fact, the Court upheld its successor, Proclamation 9645), the Government has argued that the condition precedent imposed by this Court to warrant resumption of processing certain diversity visa applications from fiscal year 2017 did not materialize. The Government has argued that, as the condition precedent expressed in the order has not been satisfied, and cannot be satisfied at this point, there is no other authority that would allow the government to use expired visa numbers for diversity visa cases from fiscal year 2017.  Consequently, the Government has argued, because the 2017 fiscal year has expired, the government simply does not have the authority to process Plaintiffs' visa applications, as it is expressly prohibited from doing so under 8 U.S.C. § 1154(a)(1)(I)(ii)(II). Nonetheless, the State Department took all possible actions to adjudicate the Plaintiffs' visa applications prior to the close of fiscal year 2017, but were ultimately limited by Proclamation 9645 at the time the fiscal year closed. And since this Court's order, the Government has taken steps necessary to be able to issue visas if required to do so by court order, but believes such an order would require violating the controlling statute, which the Government argued would exceed this Court's authority.

Plaintiffs, meanwhile, have argued that the Court's September 29, 2017 order requires the State Department to maintain the availability of *visas* for Plaintiffs, not merely visa numbers. Plaintiffs view the Government's contrary reading as at odds with the Court's own order, which required Defendants to "hold those visa numbers *to process Plaintiffs' visa applications*" if

needed. ECF No. 50 (emphasis added).  Plaintiffs argued that the order's text thus expressly contemplated that Defendants must prepare to process Plaintiffs' visas, which would require Defendants to take all actions necessary to preserve their ability to issue Plaintiffs visas.  In Plaintiffs' view, the Court's injunction opinion, as well as its statements during the injunction hearing, also made clear that the September 29, 2017, order was meant to prevent the very irreparable harm—loss of ability to seek visas—that Defendants have argued the order allowed.[1] Plaintiffs have also pointed out that the Court has since confirmed that the September 29, 2017, order was meant to preserve the Court's ability to order visa processing.[2]  Indeed, in Plaintiffs' view, if the government were correct that the September 29, 2017 order did nothing but preserve visa numbers with no ability to issue visas, that order would have been completely ineffectual even if the Supreme Court had subsequently invalidated the Executive Order—something that the Court could not have intended.  Plaintiffs also argue that the order on September 29, 2017 could not have been intended to require the preservation of visa numbers for processing *only* if that the Supreme Court invalidated the Executive Order (or Proclamation 9645), because Plaintiffs' theory of the

---

[1] *See* ECF No. 49, at 13 ("[T]here is no adequate alternative remedy available to Plaintiffs. Absent relief from this court, Plaintiffs are foreclosed from receiving visas in FY 2017 due to the impending statutory deadline. Defendants have made clear they will not issue visas past the end of the fiscal year or in excess of the statutory cap."); *id.* at 14 ("Defendants also argue that the court is precluded from ordering the processing of visas after the statutory deadline. However, as discussed above, the court is permitted to grant this relief."); ECF No. 36, at 13:11-:15 ("As I see it, what you're asking for is simply something – you're asking the Court to do something that will not – that will prevent the extinguishing of their opportunity to get the visa …."); *id.* at 56:16-:17 ("Losing the opportunity to be considered for a visa is irreparable harm.").

[2] *See* ECF No. 65, at 8 ("If the court were to now order the State Department to use the unused visa numbers to process Plaintiffs' visa applications, it would be requiring the State Department to fulfill its obligations under a prior order—the September 29 Order. Under that Order, the State Department was required to not merely reserve the unused visa numbers, but to do so for a specific purpose: the future processing of Plaintiffs' visa applications."); *see Almaqrami*, 933 F.3d at 782 (noting that the order could "give effect to the district court's prior directive, entered before the end of the selection FY, to preserve an essential (and otherwise expiring) ingredient of relief").

case did not depend upon the Executive Order's illegality.  Instead, Plaintiffs contended that the State Department's policy was unlawful *even if* the Executive Order and Proclamation were lawful. Thus, Plaintiffs believe, the Court's order can and should be read as both *requiring* visa processing if the Supreme Court invalidated the Executive Order and as *allowing* the Court to later order visa processing if the Court otherwise finds the challenged State Department policy illegal.  This reading, Plaintiffs argued, best fulfills the Court's purpose in issuing the September 29, 2017 order—preventing Plaintiffs from losing their ability to have their visa applications processed— while remaining faithful to the order's text.

Faced with these arguments, the D.C. Circuit held that "the September 29 Order need not be read to limit the authority of the district court to grant additional relief to a scenario in which the Supreme Court finds EO-2 unlawful.  Rather, it is at least possible to read that Order as doing one or both of two other things."  *Id.* at 781.  The Court explained:

> First, the Order might simply have preserved the "status quo ... while the legality of [EO-2]" was pending before the Supreme Court, meaning it preserved the district court's ability, as of September 29, to rectify the erroneous denial of plaintiffs' visas based on a legally questionable Guidance Memo or erroneous interpretation of the INA. *See P.K.,* 302 F. Supp. 3d at 7. Second, it may have told the government that *if* one specific eventuality arose—the Supreme Court found EO-2 unlawful— the State Department must process plaintiffs' visa applications. These readings may be combined. That is, the Order could be read as (1) instructing the State Department to "hold" these unused visa numbers for the purpose of enabling a later judicial judgment, which might require the government "to process" plaintiffs' applications after any salient obstacles were removed, and (2) identifying the specific judgment that would issue if the Supreme Court took a certain action….
>
> On that reading, the September 29 Order left open whether a later judgment would issue and, if so, what it would look like in the event the Supreme Court took any of myriad other tacks—for example, holding that the President could rely on § 1182(f) to restrict entry but not visas, … or that the case must be dismissed as moot, which the district court knew was a possibility on September 29. *See P.K.,* 302 F. Supp. 3d at 4 n.4 (explaining that the Court had vacated oral argument in *IRAP I* and ordered the parties to brief whether the Proclamation and expiration of EO-2 mooted that case). We need not decide the merit of these various readings; we merely note that they are possible constructions of the September 29 Order.

That means plaintiffs' claim that further relief is legally available is not "so implausible" as to be "insufficient to preserve jurisdiction." *Chafin,* 568 U.S. at 174. For example, if we were to read the Order as leaving open the possibility that a later judgment would issue, now that *IRAP I*—the primary obstacle the district court identified to granting plaintiffs additional relief—has been dismissed as moot, it is not "implausible" that the district court could grant plaintiffs additional relief. As the district court explained, if it "were to now order the State Department to use the unused visa numbers to process [p]laintiffs' visa applications, it would [arguably] be requiring the State Department to fulfill its obligations under" the September 29 Order, which instructed the State Department to "reserve the unused visa numbers ... for a specific purpose: the future processing of [p]laintiffs' visa applications." *Almaqrami,* 304 F. Supp. 3d at 6. Like in *Paunescu* and *Przhebelskaya,* such an order would give effect to the district court's prior directive, entered before the end of the selection FY, to preserve an essential (and otherwise expiring) ingredient of relief. To be sure, those cases required the government to comply with a prior order to *process* applications, *see* Gov't Br. 37, but they offer useful examples, not binding models, and neither of those courts limited their holdings to the precise scenario they confronted, *see Almaqrami,* 304 F. Supp. 3d at 7. And this case is more similar to *Paunescu* and *Przhebelskaya* than the cases dismissed as moot because the plaintiff filed too late or the court did not act in time. All told, this is enough to suggest that plaintiffs' argument that the district court could grant them additional relief, despite the end of the selection FY, is not so "completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida,* 414 U.S. 661, 666 (1974)).

*Id.* at 781-82.

Accordingly, the parties seek the Court's clarification regarding the order from September 29, 2017.

The Plaintiffs believe this Court should answer three questions. First, does the order direct the Government to preserve the ability to issue visas, or only to preserve visa numbers that, two days after the court's order, could no longer be used to issue visas? Second, if the court preserved the Government's ability to issue visas, does the order direct the Government to preserve visa numbers to be processed *only* in the event that the Supreme Court invalidated the Trump Administration's Executive Order (a condition that did not occur), or instead does the order "instruct[] the State Department to 'hold' these unused visa numbers for the purpose of enabling a

later judicial judgment," *id.* at 781, which would allow the State Department to process Plaintiffs'
visas notwithstanding the end of the 2017 fiscal year?  And, if the latter, then third, does the order
direct the State Department to hold visa numbers for the entire putative class, or only for the named
Plaintiffs?

The Government seeks the Court's clarification regarding the relationship between the
Executive Order, Proclamation 9645, and the preliminary injunction that was ultimately issued.
To this end, the Government respectfully asks the Court to clarify whether it ordered the State
Department to hold visa numbers only in the event of the Supreme Court invalidating the Executive
Order, or did the Court intend its order to apply regardless of what happened to the Executive
Order or Proclamation 9645, and, if the latter, whether its order contemplates the possibility that
the State Department may still issue diversity visas for fiscal year 2017 despite the plain language
of 8 U.S.C. § 1154(a)(1)(I)(ii)(II).

Dated: August 5, 2021

Respectfully submitted,

*/s/ Steven A. Platt*
STEVEN A. PLATT
JOSHUA S. PRESS
Senior Litigation Counsel
United States Department of Justice
Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4074
Email: steven.a.platt@usdoj.gov

*Counsel for Defendants*

*/s/ Matthew E. Price*
Matthew E. Price
Noah B. Bokat-Lindell
JENNER & BLOCK LLP
1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000 – Telephone
(202) 639-6066 – Fax
mprice@jenner.com

Omar C. Jadwat
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor

New York, NY 10004
(212) 549-2600
ojadwat@aclu.org

Cody H. Wofsy
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
39 Drumm St.
San Francisco, CA 94111
(415) 343-0770
cwofsy@aclu.org
samdur@aclu.org

Samer E. Khalaf
Abed A. Ayoub
AMERICAN-ARAB ANTI-DISCRIMINATION
COMMITTEE
1705 DeSales St. N.W., Suite 500
Washington, DC 20036
(202) 244-2990
Skhalaf@adc.org

Max Wolson (DC Bar #229562)
NATIONAL IMMIGRATION LAW CENTER
P.O. Box 34573
Washington, DC 20043
(202) 216-0261
wolson@nilc.org

Arthur B. Spitzer (D.C. Bar No. 235960)
AMERICAN CIVIL LIBERTIES UNION
OF THE DISTRICT OF COLUMBIA
915 15th St. N.W., 2nd Floor
Washington, DC 20005
(202) 601-4266
aspitzer@acludc.org

*Counsel for Plaintiffs*