UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| HAMED SUFYAN OTHMAN ALMAQRAMI, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) )   Civil Action No. 17-cv-1533 (TSC) |
| ANTONY J. BLINKEN, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) |

**ORDER**

Pending before the court is the parties' joint motion for clarification. ECF No. 93. For the reasons explained below, the court GRANTS the parties' joint motion for clarification and provides that clarification herein.

I. **BACKGROUND**

Plaintiffs in this case are citizens of Yemen and Iran who were selectees of the fiscal year 2017 diversity visa lottery. They challenge the State Department's refusal to process their diversity visa applications in reliance on Executive Order ("EO") No. 13780. Plaintiffs allege that EO 13780, which barred individuals from designated countries from entering the United States, did not authorize the State Department to suspend the processing of diversity visas, and therefore Defendants' suspension policy violated the Administrative Procedure Act ("APA").

On September 29, 2017, the court issued a memorandum opinion and order granting in part and denying in part Plaintiffs' motion for preliminary injunction. ECF Nos. 49, 50. The court found that Plaintiffs had demonstrated a right to have their diversity visas processed in accordance with the Immigration and Nationality Act ("INA") and that that the State Department

1

had a duty to act in processing diversity visa applications.  ECF No. 49 at 15.  However, because the Supreme Court was considering the legality of EO 13780, the court found that it would be premature to decide whether Defendants could rely on EO 13780 to suspend diversity visa processing.  *Id.* at 11.  At the same time, the court recognized that absent a court order, Plaintiffs' diversity visa numbers would expire at midnight on September 30, 2017, the end of the fiscal year.  8 U.S.C. § 1154(a)(1)(I)(ii)(II).  Relying on equitable principles, the court therefore ordered Defendants to "(1) reserve any unused visa numbers for fiscal year 2017 for processing following the Supreme Court's decision (should the Court rule in Plaintiffs' favor); and (2) report any unused visa numbers to the court by October 15."  ECF No. 49 at 13.

On September 24, 2017, the Executive Order expired and was replaced by Presidential Proclamation 9645 ("Proclamation 9645"), and so the Supreme Court dismissed as moot challenges to the Executive Order.  *See Trump v. Hawaii*, 138 S. Ct. 377 (2017); *Trump v. IRAP*, 138 S. Ct. 353 (2017).

Defendants moved to dismiss this case, arguing that because challenges to EO 13780 were moot, so too was Plaintiffs' challenge to Defendants' actions taken in reliance on the Executive Order.  ECF No. 65 at 11.  The court agreed with Defendants and on March 27, 2018, it dismissed Plaintiffs' lawsuit as moot.  ECF No. 66.

The D.C. Circuit reversed, holding that this case was not moot because it was "not 'implausible' that the district court here could rely on equity to take steps to compel the issuance of diversity visas, notwithstanding the end of FY 2017."  *Almaqrami v. Pompeo*, 933 F.3d 774, 781 (D.C. Cir. 2019).  The Circuit explained that the court's September 29 order "need not be read to limit the authority of the district court to grant additional relief to a scenario in which the Supreme Court finds [EO 13780] unlawful."  *Id.*  Instead, the September 29 order "left open

whether a later judgment would issue and, if so, what it would look like in the event the Supreme Court took any of myriad other tacks—for example, holding that the President could rely on § 1182(f) to restrict entry but not visas." *Id.* at 782.

Following remand from the D.C. Circuit, Defendants moved to dismiss. ECF No. 81. Before the court ruled on Defendants' motion to dismiss, Defendants filed an unopposed motion to hold the case in abeyance. ECF No. 88. In that motion, Defendants provided notice that on January 20, 2021, President Biden signed a Presidential Proclamation rescinding EO 13780 and Proclamation 9645 and directing the Secretary of State to provide the President with a "proposal to ensure that individuals whose immigrant visa applications were denied on the basis of the suspension and restriction on entry imposed by Proclamation 9645 . . . may have their applications reconsidered." *Id.* at 1-2 (citing Presidential Proclamation, *Ending Discriminatory Bans on Entry to the United States*, available at https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/proclamation-ending-discriminatory-bans-on-entry-to-the-united-states/ (last visited Oct. 27, 2021); *Rescission of Presidential Proclamation 9645 and 9983*, available at https://travel.state.gov/content/travel/en/News/visas-news/rescission-of-presidential-proclamations-9645-and-9983.html). The parties agreed that "additional time will permit the parties to continue to explore the possibility of an alternative resolution to this matter." *Id.* at 2. The court granted the parties' request to hold the case in abeyance and denied Defendants' motion to dismiss without prejudice. Minute Order (Jan. 28, 2021).

On May 27, 2021, the parties filed a joint status report in which they stated that the "best path toward finding an alternative resolution will involve a joint motion for clarification." ECF No. 90. They then filed that joint motion for clarification on August 5, 2021, stating that "the

3

key question is whether the Government can process Plaintiffs' visa applications and issue diversity visas to them, notwithstanding that fiscal year 2017 is over." ECF No. 93 at 3.

## II. DISCUSSION

### A. The Parties' Respective Positions

Defendants interpret the court's previous September 29, 2017, order as requiring them to process reserved diversity visa applications if and "*only* if the Supreme Court invalidated" EO 13780. ECF No. 93 at 3. Defendants argue that because the Supreme Court did not invalidate EO 13780, "the condition precedent . . . to warrant resumption of processing certain diversity visa applications from fiscal year 2017 did not materialize." *Id.* at 4. And because fiscal year 2017 has ended, Defendants also contend they lack statutory authority to process the reserved visas, although they have "taken steps necessary to be able to issue visas if required to do so by court order." *Id.*

Plaintiffs argue that Defendants' actions were unlawful regardless of the legality of EO 13780 and Proclamation 9645. *See id.* at 6; ECF No. 26 at 7-8. Therefore, they contend, the court order should be read as both requiring visa processing if the Supreme Court invalidated the Executive Order and as allowing the court to later order visa processing if the court otherwise finds the challenged State Department policy illegal. *Id.*

### B. Clarification of the Court's September 29, 2017, Order

Plaintiffs have a right to have their visa applications processed in accordance with the INA. ECF No. 49 at 12. While the court's Order addressed one specific eventuality—that if the Supreme Court found EO 13780 unlawful, then the State Department must process plaintiffs' visa applications—the court left open whether a later judgment would issue and, if so, what it

4

would look like in the event the Supreme Court took any of myriad other tacks. *See Almaqrami*, 933 F.3d at 782.

The court may still require Defendants to process and adjudicate the reserved fiscal year 2017 diversity visas, irrespective of the legality of EO 13780. *See id.* at 780 (explaining that when the "plaintiff files suit and the court grants *some* relief—but not the visa—before October 1 . . . the court might lawfully take steps [after the fiscal year has ended] to compel the government to process the plaintiff's application and issue her a diversity visa anyway") (emphasis in original). For example, the court recently held in a separate but analogous case that the State Department violated the APA when it relied on two Presidential Proclamations to suspend the processing and adjudication of fiscal year 2021 diversity visas. *See Rai v. Biden*, No. 21-CV-863 (TSC), 2021 WL 4439074, at *1 (D.D.C. Sept. 27, 2021). That case did not turn on the legality of the two Proclamations, but rather, in part, on whether the defendants could halt the processing and issuance of diversity visas for applicants living in particular regions. *Id.* at *7. As the court explained, while the two Proclamations restricted the *entry* of immigrants into the country, they were silent regarding the issuance and adjudication of visas. *Id.* Nor does any statute authorize the State Department to suspend the processing and adjudication of diversity visas. *Id.* at *8. To the contrary, §§ 1202(b) and 1202(d) of the INA require that all immigrant and nonimmigrant visa applications "*shall* be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(b), (d) (emphasis added). *See also Gomez v. Trump*, 485 F. Supp. 3d 145, 198 n.23 (rejecting the State Department's argument that they have no "nondiscretionary duty to afford plaintiffs the opportunity to apply for immigrant visas at consular interviews"). Consequently, the court held that the defendants' actions violated the APA and ordered the defendants to process and adjudicate reserved diversity visas.

As in *Rai*, here, Plaintiffs argue that EO 13780 "does not require or authorize the State Department's policy" of refusing to process and adjudicate Plaintiff's diversity visa applications. ECF No. 2 at 2. Indeed, like the Proclamations at issue in *Rai*, EO 13780 suspended the right of certain persons to enter the United States but was silent on diversity visa processing and adjudication. *See* 82 Fed. Reg. 13,209 (March 6, 2017), *amended by* 82 Fed. Reg. 27,965 (June 14, 2017). According to Plaintiffs, Defendants are obligated by statute to process and adjudicate diversity visas, and EO 13780 does not alter that obligation. *See* ECF No. 2 at 2. Plaintiffs' argument is well founded.

Because the statutory deadline for processing and adjudicating fiscal year 2017 diversity visas has passed, a court order is required for Defendants to legally process the reserved diversity visas. *See Almaqrami*, 933 F.3d at 780. The court has not had occasion to rule on whether Defendants violated the APA irrespective of the legality of EO 13780, and therefore has not ordered Defendants to process the reserved diversity visas. However, in the wake of recent court decisions addressing similar legal issues, Defendants are well advised to pursue a resolution to this case that does not entail further briefing. *See, e.g.*, *Rai*, 2021 WL 4439074, at *1; *Gomez*, 485 F. Supp. 3d at 171; *Filazapovich v. Dep't of State*, No. 21-CV-00943 (APM), 2021 WL 4127726, at *13 (D.D.C. Sept. 9, 2021). Accordingly, the parties are instructed file a joint status report in 30 days, and every 30 days thereafter, providing an update on the parties' efforts to reach a resolution. To the extent either party requests a change in the status quo, the joint status report shall be accompanied by a proposed order.

### III. CONCLUSION

For the reasons explained above, the court GRANTS the parties' joint motion for clarification and reiterates that the court may still compel Defendants to process and adjudicate the reserved fiscal year 2017 diversity visas.

Date:  October 27, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge